## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | | |
|---|---|---|
| FRED PONDER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | CASE NO.  1:16-cv-04125-ODE-LTW |
| v. | ) | |
| | ) | |
| OCWEN LOAN SERVICING, LLC, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## OCWEN LOAN SERVICING, LLC'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION FOR PROTECTIVE ORDER TO QUASH PLAINTIFF'S NON-PARTY SUBPOENA TO REAL ESTATE FINANCE DIVISION OF NEW YORK DEPARTMENT OF FINANCIAL SERVICES

Pursuant to Federal Rules of Civil Procedure 26 and 45, Defendant Ocwen Loan Servicing, LLC ("Ocwen"), respectfully files this Motion for Protective Order seeking to quash the Non-Party Subpoena issued by Plaintiff to the Real Estate Division of the New York Department of Financial Services ("NY DFS").   In support, Ocwen states as follows:[1]

---

[1] Ocwen has contemporaneously filed a Motion to Quash the Subpoena directed to NY DFS in the U.S. District Court for the Southern District of New York, Manhattan Division, at Case No. 1:19-MC-236, and is filing the instant Motion for Protective Order in this Court out of an abundance of caution and in accordance with Rule 26(c), which expressly allows such a filing in cases in which discovery disputes involve multiple courts. *See Melder v. State Farm Mut. Auto. Ins. Co.*, CIVA108CV1274RWSJFK, 2008 WL 1899569, at *3 (N.D. Ga. Apr. 25, 2008) (citing *United States v. Star Scientific, Inc.*, 205 F. Supp. 2d 482, 485 (D. Md. 2002)).   Pursuant to Fed. R. Civ. P. 45(f), Ocwen has asked the New York District Court to transfer the Motion to Quash to this Court for resolution.  *See Melder*, 2008 WL 1899569, at *5 (transferring motion to quash to forum court).  *See also Kearney*

**INTRODUCTION**

This lawsuit involves three claims for statutory violations under the Real Estate Settlement Procedures Act ("RESPA"), the Fair Credit Reporting Act ("FCRA"), and the Fair Debt Collection Practices Act ("FDCPA").  Despite having only alleged three limited claims for violations of these statutes, Plaintiff has served hundreds of discovery requests on Ocwen and is in the process of seeking broad, sweeping, and grossly disproportionate discovery from various non-parties. Apparently unsatisfied with discovery responses provided by Ocwen in this case, Plaintiff has now issued an invasive and harassing subpoena to non-party NY DFS seeking "Compliance Monitor and Targeted Examination Reports" concerning Consent Orders between NY DFS and Ocwen dating back to 2011, 2012, and 2014. Not only are the documents sought plainly irrelevant to the three statutory claims at issue, but they concern a time period outside the statutes of limitations of Plaintiff's claims and they are protected from disclosure under various state and federal banking and privacy laws.

---

for *Kearney v. Jandernoa*, 172 F.R.D. 381, 383 n. 4 (N.D. Ill. 1997) (noting that "a protective order under Rule 26(c) can be sought/determined in the court where the underlying action is pending, as well as the court from which the subpoena issued") and *Nunag-Tanedo v. E. Baton Rouge Par. Sch. Bd.*, 112CV01262TWTJFK, 2012 WL 12888856, at *3 (N.D. Ga. May 15, 2012) (citing *Star Scientific* and *Kearney* for same propositions).

71477053v.3 1006335/01554

Plaintiff is clearly abusing the discovery process and using this case as an improper fishing expedition.  There simply is no reason for him to seek information from New York regulators relating to New York borrowers, when Plaintiff is a Georgia resident, the loan is a Georgia loan, and the property is located in Georgia. Accordingly, Ocwen seeks an order quashing the Subpoena to NY DFS (Doc. 104) and protecting the disclosure of the requested documents for the reasons more specifically set forth below.

## RELEVANT FACTUAL BACKGROUND

On November 3, 2016, Plaintiff filed a single-count FCRA Complaint against Ocwen.  (Doc. 1.)  On January 16, 2017, Plaintiff amended his Complaint adding claims for negligence and alleged violations under the FDCPA and RESPA.  (Doc. 16.)  Ocwen moved to dismiss the Amended Complaint, and in response, Plaintiff requested leave to amend his Complaint a second time.  (Doc. 35, 39.)  The Second Amended Complaint was permitted and after further 12(b)(6) briefing, the Court entered an order dismissing Plaintiff's negligence claim, but allowing the RESPA, FDCPA, and FCRA claims to proceed.  (Doc. 70.)

Shortly after Ocwen served responses to Plaintiff's first set of written discovery, Plaintiff's counsel served a second set of written discovery.  (Doc. 92.) While the first round of discovery requests was markedly voluminous with over 120 distinct written requests, the second set of discovery was absurd: 168 requests for

admissions and 28 additional document requests.[2]  What's more, **none** of the nearly

200 additional discovery requests even relate to Plaintiff or the loan at issue.

Included in the nearly 200 additional discovery requests in the second set of

discovery are two (2) requests concerning a Consent Order entered into between

Ocwen and the NY DFS on December 19, 2014.  A true and correct copy of the

December 19, 2014, Consent Order is attached hereto as **Exhibit A**.  Specifically,

Plaintiff requested that Ocwen produce in discovery "all reports by the Compliance

Monitor identified in ¶ 9" of the December 19, 2014, Consent Order, and "all reports

by the Operations or Compliance Monitors generated" pursuant to the December 19,

2014, Consent Order.  On March 25, 2019, Ocwen objected to these requests on

multiple grounds, including burdensomeness, relevancy, not appropriately limited in

time or tailored in scope, broadness, disproportionality, outside the applicable statute

of limitations, and confidentiality.  Ocwen also objected on the grounds that Plaintiff

is on an improper fishing expedition which violates the spirit and rules of discovery.

True and correct copies of the relevant requests and objections are attached hereto

as **Exhibit B**.

---

[2] In total, Plaintiff has served (and Ocwen has timely responded to) 32 interrogatories, 230 requests for admissions, and 62 document requests to date.

Apparently unsatisfied with Ocwen's objections, Plaintiff's counsel then served a non-party subpoena on NY DFS.[3]  The Subpoena commands the production of "Compliance Monitor and Targeted Examination Reports enforcing the Consent Orders entered between [NY DFS] and Ocwen Financial Corporation and Ocwen Loan Servicing, LLC including those entered on 9/15/2011, 12/15/2011, 12/5/2012, and 12/19/2014," by Saturday, May 4, 2019.

Not only does Plaintiff seek from NY DFS certain of the same documents already requested from (and objected to by) Ocwen in discovery in the underlying lawsuit, but the Subpoena requests even older (and more irrelevant) documents concerning orders entered into in September 2011 (before Ocwen even serviced the subject loan in this case), December 2011 (just after Ocwen began servicing), and December 2012.   The conduct at issue in the 2011 and 2012 Orders undoubtedly pre-dates Ocwen's servicing of Plaintiff's loan.  Additionally, these documents fall outside the applicable statutes of limitation for the three statutory claims alleged. Further, the Consent Orders relate to New York property laws and New York borrowers, whereas this case concerns a Georgia borrower, with a Georgia promissory note, and a Georgia Security Deed.

---

[3] Plaintiff first served a non-party subpoena on NY DFS on April 4, 2019.  Plaintff subsequently served an amended subpoena on April 24, 2019.  The only difference between the first subpoena and the amended subpoena is the location and time for the production of documents – the exact same documents are sought in both. (Doc. 101, 104.)

Viewed in context with the other discovery served, it is clear that Plaintiff is simply on a mission to harass Ocwen (and now the NY DFS) with grossly irrelevant, disproportionate, and unduly burdensome requests. Additionally, it appears Plaintiff is engaging in an unfettered fishing expedition in order to leverage this case into an opportunity to file a future class action against Ocwen. Such conduct violates the spirit and purpose of discovery and should not be permitted. Consequently, this Court should enter a protective order to effectively quash the Subpoena.

## ARGUMENT & CITATION TO AUTHORITIES

### I.    APPLICABLE LEGAL STANDARD.

Discovery in all matters is limited to only what is relevant to a party's claim or defense or that which is reasonably calculated to lead to the discovery of admissible evidence. FED R. CIV. P. 26(b); *Chudasama v. Mazda Motor Corp.*, 123 F.3d 1353, 1368 (11th Cir. 1997) (explaining claims and defenses determine the scope of discovery). A court must "limit the frequency or extent of discovery otherwise allowed by these rules or by local rule if it determines that: (1) the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive; (ii) the party seeking discovery has had ample opportunity to obtain the information by discovery in the action; or (iii) the burden or expense of the proposed discovery outweighs its likely benefit, considering the needs of the case, the amount in

controversy, the parties' resources, the importance of the issues at stake in the action, and the importance of the discovery in resolving the issues." FED. R. CIV. P.. 26(b)(2)(C).

## II.   OCWEN HAS STANDING TO CHALLENGE THE NON-PARTY SUBPOENA.

A party has standing to "quash a subpoena directed at a non-party where the party is seeking to protect a personal privilege or right." *Melder v. State Farm Mut. Auto. Ins. Co.*, Civ. Action No. CIVA108CV1274RWSJFK, 2008 WL 1899569, at *2 (N.D. Ga. Apr. 25, 2008). Furthermore, a party has standing to challenge a non-party subpoena seeking the same information requested directly from the party. *Id.*

In this case, Plaintiff seeks many of the same documents from NY DFS as it previously did in its Requests for Production issued directly to Ocwen. Furthermore, any additional documents demanded from NY DFS relate directly to the documents already requested from Ocwen but cover an earlier time period, and they would be subject to the same and further objections. There currently exists a dispute between Plaintiff and Ocwen concerning the documents to be produced by Ocwen in this case, and the outcome of that dispute potentially impacts the duplicative requests directed at NY DFS. As such, Ocwen has standing to move to quash the non-party Subpoena to NY DFS. *See id.* (finding party had standing to quash non-party subpoena seeking documents which were requested directly from the party and were the subject of a discovery dispute); *Langford v. Chrysler Motors Corp.,* 513 F.2d

1121, 1126 (2d Cir. 1975) (upholding lower court's quashing of non-party subpoena in light of motion of party plaintiff where "[t]he materials sought were not only voluminous, but also they had no relevance to the main issues in the case . . .").

## III.   A PROTECTIVE ORDER SHOULD BE ENTERED PRECLUDING THE REQUESTED DISCOVERY.

Under Rule 26, "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense  . . . ." FED. R. CIV. P. 26(b)(1). However, a court **must** quash or modify a subpoena if it "requires disclosure of privileged or other protected matter, if no exception or waiver applies" and may quash or modify a subpoena if it discloses certain confidential information.  FED. R. CIV. P. 45(c)(3)(A)(iii), (B)(i).  To make this determination, courts apply a balancing test, weighing the probative value of the documents sought against the burden of complying with the subpoena, considering the following factors: "relevance of the information requested, the requesting party's need for the documents, the breadth of the document request, the time period covered by the request and the burden imposed, including the expense and inconvenience to a nonparty to whom a request is made."  *Brody*, 2009 WL 3095642, at *3.

The decision to enter a protective order is within the court's discretion and does not depend on a legal privilege. *Farnsworth v. Procter & Gamble Co.*, 758 F.2d 1545, 1548 (11th Cir. 1985).  Rule 26(c) provides that upon a showing of good cause, a court "may make any order which justice requires to protect a party or person from

annoyance, embarrassment, oppression, or undue burden or expense."  Here, both legal privilege and good cause support the entry of a protective order with respect to the Subpoena for several reasons, as explained below.[4]

### A.    The Documents Sought Are Not Relevant to Plaintiff's Claims.

The scope of discovery is not without limits. *Oppenheimer Fund v. Sanders*, 437 U.S. 340, 351-52 (1978) (citing *Hickman v. Taylor,* 329 U.S. 495, 501 (1947)). Here, Plaintiff's Subpoena to NY DFS seeks documents that could not possibly concern "any nonprivileged matter that is relevant to any party's claim or defense." FED. R. CIV. P. 26(b)(1).  Liability in the underlying case does not turn on "Compliance Monitor and Targeted Examination Reports" dating back several years prior to Ocwen's servicing of Plaintiff's loan.  Moreover, the reports requested are from the <u>New York</u> Department of Finance, but Plaintiff is from <u>Georgia</u> and the mortgage loan at issue relates to real property in the State of <u>Georgia</u>.  The Consent Orders with NY DFS and the related reports have nothing to do with Plaintiff, his loan, or the alleged claims asserted under RESPA, the FDCPA or the FCRA.

---

[4] "The scope of discovery under a Rule 45 subpoena is the same as that permitted under Rule 26." *Cty. of Niagara v. Netherlands Ins. Co*., 14-CV-737A(F), 2017 WL 2059808, at *3 (W.D.N.Y. May 15, 2017), *aff'd* at 14-CV-737-A(F), 2017 WL 3917133 (W.D.N.Y. Sept. 7, 2017).  *See also Bahrami v. Maxie Price Chevrolet-Oldsmobile Inc.*, No. 1:11-CV-4483-SCJ-AJB, 2013 WL 3800336,a t *3 (N.D. Ga. June 19, 2013) ("Discussion of the scope of discovery allowed under a subpoena requires consideration of Rule 26."); *Se. Mech. Servs., Inc. v. Brody*, No. CIV.A.1:09CV0086-GETS, 2009 WL 3095642, at *2 (N.D. Ga. June 22, 2009).

71477053v.3 1006335/01554

Furthermore, the requested documents fall outside the applicable statutes of limitation of the claims at issue.  Plaintiff, who filed his FCRA claim in November 2016, and his RESPA and FDCPA claims in January 2017, attempts to reach far back into the past to obtain compliance and examination reports related to consent orders entered into in New York in 2011 and 2012 – well before any of his claims could have accrued based on the applicable statutes of limitation.[5]   *See McCarley v. KPMG Int'l*, 293 Fed. Appx. 719, 722 (11th Cir.  2008) (noting RESPA's three-year statute of limitation);   *Kelley v. Law*, 1:13-CV-266-WSD-ECS, 2013 WL 12382670, at *2 (N.D. Ga. Apr. 29, 2013) (dismissing FDCPA claim because it concerned a communication that fell outside "the one-year statute of limitations for FDCPA claims and citing 15 U.S.C. § 1692k(d)); *Lamb v. Verizon Wireless Servs., L.L.C.*, 284 Ga. App. 696, 697, 644 S.E.2d 412, 413 (2007) (reciting FCRA's two year statute of limitation).  Even the December 2014 Consent Order and its related examination and compliance reports fall outside the scope of relevant information because Plaintiff's RESPA claims concern the timing and response of his purported Notices of Error and Qualified Written Requests to Ocwen, which are clearly governed by the statute itself.

---

[5] It is undisputed that Ocwen begin servicing the subject loan in November 2011; yet Plaintiff seeks documents from NY DFS prior to that time beginning of the servicing of the loan as he requests documents related to the September 2011 Consent Order.

In the Second Amended Complaint, Plaintiff alleges that Ocwen RESPA by failing to (1) acknowledge receipt of Plaintiff' inquiries, qualified written requests, and notices of error within five (5) days of receipt, (2) conduct a reasonable investigation into errors raised by Plaintiff in a notice of error, (3) provide Plaintiff with a written response regarding the outcome of Ocwen's investigation into the errors and issues raised by Plaintiff, (4) provide Plaintiff with a written statement as to Plaintiff's right to request documentation relied on by Defendant in reaching its determination within thirty (30) days of receipt of a notice of error, (5) conduct a reasonable investigation absent receipt of additional information from Plaintiff as a condition precedent to conducting a reasonable investigation into errors and issues raised by Plaintiff.  (Doc. 53, pp. 23-26.)  None of these issues are decided or impacted by any compliance review or examination conducted by NY DFS.  Rather, any liability under RESPA turns purely on whether Ocwen complied with its statutory obligations. Moreover, the December 2014 Consent Order addresses conduct prior to that order being signed, which has no bearing on Plaintiff's current claims.  Finally, but equally important, the burdens of production are wholly disproportionate to any benefit of disclosure, considering the limited damages permitted under the three statutory claims at issue.

Rule 26 commands that the Court:

"must limit the frequency or extent of discovery otherwise allowed by these rules . . . if it determines that . . . the discovery sought is

> unreasonably cumulative or duplicative, or can be obtained from some
> other source that is more convenient, less burdensome, or less
> expensive; . . .[or] the burden or expense of the proposed discovery
> outweighs its likely benefit, considering the needs of the case, the
> amount in controversy, the parties' resources, the importance of the
> issues at stake in the action, and the importance of the discovery in
> resolving the issues.

FED. R. CIV. P. 26(b)(2)(C); *United Parcel Svc. of Am., Inc. v. The Net, Inc.*, 222 F.R.D. 69, 71 (E.D.N.Y. 2004) ("[T]he maturation of Rule 26(b)(2) over several decades allows judges to use the limitations of Rule 26(b)(2) with increasing frequency and with an eye toward equity."). *See also Shannon v. Albertelli Firm, P.C.*, No. 14-11832, 2015 WL 2114055, at *4 (11th Cir. May 7, 2015) ("[W]e agree with the district court that [the] discovery requests were simply a 'fishing expedition' whose burdens or expenses 'outweigh[ed] [their] likely benefit.'").

Courts in this Circuit routinely limit or quash discovery requests, including non-party requests, where, as here, the discovery sought is not relevant to the claims or beneficial to the Court's determination of the legal issues. *See, e.g., Hernandez v. Hendrix Produce, Inc.*, CV613-053, 2014 WL 953503, at *2-3 (S.D. Ga. Mar. 10, 2014) (granting motion to quash subpoena seeking information unrelated to core focus of their case); *Alig-Mielcarek v. Jackson*, 286 F.R.D. 521, 527 (N.D. Ga. 2012) (declining to enforce broad discovery of private documents without limitations where requests were "like a bulldozer that levels an entire hill in the hopes of finding some specks of gold"); *Rosenbaum v. Becker & Poliakoff, P.A.*, No. 08-cv-81004,

2010 WL 623699, at * 9 (S.D. Fla. Feb. 23, 2010) (explaining Rule 26(b)(2)(C) imposes "a 'rule of proportionality' which requires discovery to be restricted where the burden or expense outweighs the proposed benefit").  The same principles apply here.  This Court should enter an order effectively quashing the Subpoena to NY DFS because the information sought is not relevant, and it is grossly disproportionate considering the limited scope of the claims asserted and damages available.

### B.   New York & Georgia Law Preclude Disclosure of the Documents.

Second, a protective order should be entered because the materials and the documents requested are confidential in nature and are protected from disclosure by both New York and Georgia Banking laws.[6]  New York Banking Law § 36 provides a broad protection from disclosure for all documents concerning or arising from a regulatory examination or investigation:

> All reports of examinations and investigations, correspondence and memoranda concerning or arising out of such examination and investigations . . . *shall be confidential communications, shall not be subject to subpoena and shall not be made public* unless, in the judgment of the superintendent, the ends of justice and the public advantage will be subserved by the publication thereof, in which event the superintendent may publish or authorize the publication of a copy of any such report or any part thereof in such manner as may be deemed proper or unless such laws specifically authorize such disclosure.

---

[6]  Ocwen has already objected to the production of such documents in discovery on these grounds. (*See* Ex. B, pp. 11-12.)

NY BANKING LAW § 36(10) (emphasis added). New York courts have consistently enforced these protections from disclosure of regulatory supervisory materials. *Alaska Elec. Pension Fund v. Bank of Am. Corp.*, 14-CV-7126 (JMF), 2016 WL 6779901, at *5 (S.D.N.Y. Nov. 16, 2016) (denying motion to compel production of documents, applying N.Y. Banking Law § 36(10), and "New York Banking Law protects DFS materials from disclosure."); *Clark v. Flynn*, 9 A.D.2d 249, 252 (N.Y. App. Div. 1959) (holding that letter from Superintendent to examined bank regarding the Department's report and recommendation fell within the scope of documents subject to the New York banking privilege); *see also Matter of Estate of Saxon*, 176 Misc. 2d 724, 727, 673 N.Y.S.2d 625 (N.Y. Sur. 1998) ("witness by law [was] prohibited from revealing any aspect of the bank examiner reports conducted by the Superintendent").

In this case, there is no question that the Subpoena seeks materials that are protected from disclosure by the New York Banking Law. The Subpoena seeks "Compliance Monitor and Targeted Examination Reports enforcing the Consent Orders entered between [NY DFS] and Ocwen Financial Corporation and Ocwen Loan Servicing, LLC including those entered on 9/15/2011, 12/15/2011, 12/5/2012, and 12/19/2014." These documents would include reports of NY DFS examinations or investigations. As such, they should be protected from disclosure under the New York Banking Law § 36(10).

Likewise, the Georgia statutes offer similar protections from disclosure of documents relating to regulatory investigations conducted by the Georgia Department of Banking and Finance. *See Fed. Ins. Deposit Corp. v. Briscoe*, Civil Action No. 1:11-cv-2303-SCJ, 2014 WL 12775663, at *3 (N.D. Ga. Feb. 4, 2014) (denying motion to compel documents relating to examination and reports from non-party Ga Dep't of Banking and Finance). Under O.C.G.A. § 7-1-70, all records of the Department are confidential. In fact, certain documents are never subject to disclosure absent a specific order from a court which "holds the public interest in the safety and soundness of the banking system and its regulation to be outweighed by other interests of justice." O.C.G.A. § 7-1-70(c)(3). This category includes internal investigations, documents, and notes which reflect the deliberative processes of employees; advisory opinions; notes and memos of the Department that are not purely factual in nature; and other similar materials or notes. *Id.*

Again, whether Ocwen complied with the Consent Orders issued by NY DFS in 2011, 2012, and 2014 has no bearing on whether Ocwen has violated its statutory obligations to Plaintiff—a Georgia resident—under the FCRA, FDCPA or RESPA, in the underlying case. The Consent Orders do not alter Ocwen's federal statutory responsibilities and thus cannot be germane to the issue of Ocwen's liability to Plaintiff. As such, a protective order should be entered in Ocwen's favor with respect to the Subpoena.

### C.    The Federal Banking Examination Privilege Protects The Disclosure of the Requested Documents.

A protective order should also be entered because the documents sought are privileged pursuant to the federal banking examination privilege. "Federal courts 'have long recognized that the report of a bank examiner is protected by a qualified privileged.'" *Rouson ex rel. Estate of Rouson v. Eicoff*, No. 04-CV-2734 ARR KAM, 2006 WL 2927161 (E.D.N.Y. Oct. 11, 2006) (citing *In re Subpoena Served upon Comptroller of Currency*, 967 F.2d 630, 633 (D.C. Cir. 1992)); *In re Franklin Nat'l Bank Sec. Litig.*, 478 F. Supp. 577, 580-82 (E.D.N.Y. 1979). This privilege, often referred to as the bank examination privilege, "is firmly rooted in practical necessity," *In re Subpoena*, 967 F.2d at 633, and is "'designed to promote the effective functioning of an agency by allowing the agency and the regulated banks the opportunity to be forthright in all communications.'" *Mktg. Investors Corp. v. New Millennium Bank*, No. 3:11-CV-1696-D, 2012 WL 1357502, at *7 (N.D. Tex. Apr. 16, 2012) *report and recommendation adopted in part, rejected in part on other grounds*, No. 3:11-CV 1696-D, 2012 WL 2900606 (N.D. Tex. June 5, 2012) (citing *In re Bankers Trust Co.*, 61 F.3d 465, 471 (6th Cir. 1995)).

The bank examination privilege "protects communications between banks and their examiners in order to preserve absolute candor essential to the effective supervision of the banks." *Linde v. Arab Bank, PLC*, No. 04-2799, 2009 WL 3055282, at *1 (E.D.N.Y. Sept. 21, 2009) (citations omitted). The privilege "covers

16

the opinions and recommendations of bank examiners and the banks' responses to the examiners' inquiries." *Id.* (citing *Bankers Trust*, 61 F.3d at 471; *In re Subpoena*, 967 F.2d at 633-34; *Bank of China v. St. Paul Mercury Ins. Co.*, No. 03-9797, 2004 WL 2624673, at *4 (S.D.N.Y. Nov. 18, 2004)); *see also Rouson*, 2006 WL 2927161 at *4 (citing *Franklin Nat'l Bank*, 478 F. Supp. at 581). Moreover, "[c]ourts have justified the privilege because of the distinctively continuous and informal process of bank regulation, which especially requires candor from regulated entities." *FHFA v. JPMorgan Chase & Co.*, 978 F. Supp. 2d 267, 273 (S.D.N.Y. 2013) (citations omitted). Indeed, the court in *JPMorgan Chase* stated:

> Bank safety and soundness supervision is an iterative process of comment by the regulators and response by the bank. The success of the supervision therefore depends vitally upon the quality of communication between the regulated banking firm and the bank regulatory agency. This relationship is both extensive and informal . . . in the sense that it calls for adjustment, not adjudication . . . . These conditions simply could not be met as well if communications between the bank and its regulators were not privileged.

*Id.* (quoting *In re Subpoena*, 967 F.2d at 633).

In this case, the Subpoena seeks documents that would contain the opinions, recommendations, and analyses of the NY DFS Compliance Monitor(s).  The cases make it clear that the banking examination privilege protects "agency opinions and recommendations and banks' responses thereto." *Bankers Trust*, 61 F.3d at 471. *See also FHFA v. HSBC N. Am. Holdings Inc.*, No. 11-6189, 2014 WL 1909446, at *3 (S.D.N.Y. May 13, 2014) (holding that bank examination privilege applied to

documents sent to banking regulator reflecting items to discussed at a joint meeting, documents providing narrative answers to regulator's questions, and documents providing qualitative reviews of the regulated entities operations).  Thus, the Subpoena plainly seeks documents that are protected from disclosure by the banking examination privilege, and Plaintiff cannot show any good cause to override the privilege in this case.

**III.    IF THE COURT IS NOT INCLINED TO ENTER THE PROTECTIVE ORDER REQUESTED, THE COURT SHOULD MODIFY THE SUBPOENA AND REQUIRE DOCUMENTS TO BE PRODUCED UNDER SPECIAL CONDITIONS.**

If the Court ultimately decides not to enter a protective order and/or the documents sought from NY DFS are ordered produced pursuant to the Subpoena by either this Court or the New York District Court, this Court should enter an order providing that any documents produced be limited to an appropriate time period and to allow for redactions of irrelevant, confidential, and/or proprietary information that is unrelated to Plaintiff's statutory claims in the underlying case.  Further, such documents should be produced subject to an agreed upon confidentiality order. *Farnsworth v. Procter & Gamble Co.*, 758 F.2d 1545, 1548 (11th Cir. 1985) ("Rule 26(c) gives the district court discretionary power to fashion a protective order . . . which does not depend on a legal privilege.").

This Court may issue an order "forbidding inquiry into certain matters."  FED. R. CIV. P. 26(c)(1)(D).  A protective order issued pursuant to Fed. R. Civ. P. 26(c)

is based on the standard of "good cause," which calls for a "sound basis or legitimate need" to limit discovery of the subject information. *In re Alexander Grant & Co. Litigation*, 820 F.2d 352, 356 (11th Cir. 1987); Fed. R. Civ. P. 26(c)(1) ("[A] court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense."). Here, if the Court ultimately decides that certain of the documents should be produced, the Subpoena should be limited to only that which is relevant to the claims alleged, within a timeframe that is not barred by the statutes of limitation, with all other extraneous or non-applicable information redacted, and the documents should be subject to an agreed confidentiality order.

## CONCLUSION

In sum, there is nothing relevant to either party's claims or defenses in this case that Plaintiff could obtain from production of the documents demanded in the Subpoena. Moreover, the subpoenaed documents are highly confidential and protected by state and federal banking and regulatory laws. Accordingly, this Court should enter a protective order and quash the non-party Subpoena to NY DFS. In the alternative, Ocwen respectfully requests that this Court enter an order limiting the Subpoena to an appropriate time period and to allow for redactions of irrelevant, confidential, and/or proprietary information.

71477053v.3 1006335/01554

Dated: May 3, 2019.

LOCKE LORD LLP

*s/ John Michael Kearns*
Elizabeth J. Campbell
Georgia Bar No. 349249
Email: *ecampbell@lockelord.com*
John Michael Kearns
Georgia Bar No. 142438
Email: *john.kearns@lockelord.com*
Terminus 200, Suite 1200
3333 Piedmont Road NE
Atlanta, GA 30305
(404) 870-4600
(404) 872-5547 (fax)

*Attorneys for Ocwen Loan Servicing, LLC*

## <u>CERTIFICATE OF COMPLIANCE</u>

Pursuant to Local Rule 7.1(D), I hereby certify that the foregoing motion has been prepared in compliance with Local Rule 5.1 (B) and (C), using 14-point Times New Roman font.

/s/ *John Michael Kearns*
John Michael Kearns
Georgia Bar No. 142438

21

## <u>CERTIFICATE OF SERVICE</u>

I certify that I have this 3rd of May, 2019, electronically filed the foregoing

**DEFENDANT OCWEN LOAN SERVICING, LLC'S MEMORANDUM IN SUPPORT OF ITS MOTION FOR PROTECTIVE ORDER RELATING TO PLAINTIFF'S NON-PARTY SUBPOENA TO REAL ESTATE FINANCE DIVISION OF NEW YORK DEPARTMENT OF FINANCIAL SERVICES**

with the Clerk of Court using the CM/ECF system, which will electronically serve the same on Plaintiff's counsel of record listed below:

> Orion Gregory Webb
> Smith Welch Webb & White, LLC
> Suite 300
> 280 Country Club Drive
> Stockbridge, GA 30281
> *owebb@smithwelchlaw.com*

> *s/ John Michael Kearns*
> John Michael Kearns
> Georgia Bar No. 142438
>
> *One of the Attorneys for Defendant Ocwen Loan Servicing, LLC*

22

71477053v.3 1006335/01554