# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
### ATLANTA DIVISION

| | | |
|---|---|---|
| FRED PONDER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | CASE NO. 1:16-cv-04125-ODE-LTW |
| v. | ) | |
| | ) | |
| OCWEN LOAN SERVICING, LLC, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## OCWEN LOAN SERVICING, LLC'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION FOR PROTECTIVE ORDER TO QUASH PLAINTIFF'S NON-PARTY SUBPOENAS TO BOSTON PORTFOLIO ADVISORS, INC. AND STONETURN GROUP, LLP

Pursuant to Federal Rules of Civil Procedure 26 and 45, Defendant Ocwen Loan Servicing, LLC ("Ocwen"), respectfully files this Motion for Protective Order seeking to quash the Non-Party Subpoenas issued by Plaintiff to Boston Portfolio Advisors, Inc. ("BPA") and StoneTurn Group, LLP ("StoneTurn"). In support, Ocwen states as follows:[1]

---

[1] Ocwen filed a Motion to Quash the Subpoena directed to BPA in the U.S. District Court for the Southern District of Florida, Fort Lauderdale Division, at Case No. 0:19-MC61194, on May 10, 2019, and is filing the instant Motion for Protective Order in this Court out of an abundance of caution and in accordance with Rule 26(c), which expressly allows such a filing in cases in which discovery disputes involve multiple courts. *See Melder v. State Farm Mut. Auto. Ins. Co.*, CIVA108CV1274RWSJFK, 2008 WL 1899569, at *3 (N.D. Ga. Apr. 25, 2008) (citing *United States v. Star Scientific, Inc.*, 205 F. Supp. 2d 482, 485 (D. Md. 2002)). Pursuant to Fed. R. Civ. P. 45(f), Ocwen has asked the Florida District Court to transfer the BPA Motion to Quash to this Court for resolution. *See Melder*, 2008 WL 1899569, at *5 (approving transfer of motion to quash to forum court). *See also Kearney*

# INTRODUCTION

Plaintiff, whose mortgage loan is currently serviced by Ocwen, has filed claims against Ocwen for purported statutory violations under the Real Estate Settlement Procedures Act ("RESPA"), the Fair Credit Reporting Act ("FCRA"), and the Fair Debt Collection Practices Act ("FDCPA"). Despite this lawsuit being limited to only these three statutory claims, Plaintiff has served hundreds of discovery requests on Ocwen and is in the process of seeking broad, sweeping, and grossly disproportionate discovery from multiple non-parties.

Rather than address his discovery grievances through the Court's procedures in this case, Plaintiff has instead served invasive and harassing subpoenas to several non-parties, including the New York Department of Financial Services ("NY DFS")[2], BPA, and StoneTurn seeking (among other things), audit reports conducted

_for Kearney v. Jandernoa_, 172 F.R.D. 381, 383 n. 4 (N.D. Ill. 1997) (noting that "a protective order under Rule 26(c) can be sought/determined in the court where the underlying action is pending, as well as the court from which the subpoena issued") and _Nunag-Tanedo v. E. Baton Rouge Par. Sch. Bd._, 112CV01262TWTJFK, 2012 WL 12888856, at *3 (N.D. Ga. May 15, 2012) (citing _Star Scientific_ and _Kearney_ for same propositions). Ocwen also anticipates filing a Motion to Quash the StoneTurn Subpoena in the United States District Court for the District of Massachusetts, as compliance with that subpoena is requested in that district. (Doc. 114.)

[2] On May 3, 2019, Ocwen was compelled to file a Motion to Quash a non-party subpoena issued by Plaintiff to the Real Estate Division of the New York Department of Financial Services ("NY DFS") in the United States District Court for the Southern District of New York, Manhattan Division, now pending as Miscellaneous Proceeding No. 1:19-mc-236. The Subpoenas at issue in this Motion seek testimony and documents relating directly to the NY DFS matters that Ocwen has already moved to quash. Ocwen also filed a Motion

71525432v.3 1006335/01554

in connection with any Consent Orders entered into between Ocwen and NY DFS and documents related thereto, all loan files provided to BPA and StoneTurn by Ocwen for the audits in connection with said Consent Orders, and all documents relating to Ocwen's compliance with federal or state laws. BPA and StoneTurn served as the "Compliance Monitors" for the December 5, 2012 Consent Order.

Not only are the requested documents plainly irrelevant to Plaintiff's FDCPA, FCRA, and RESPA claims, as they involve New York borrowers and New York loan files, but the Ocwen/NY-DFS Consent Orders date back to 2011, 2012, and 2014, and either pre-date Ocwen's servicing of Plaintiff's loan or fall far outside the applicable statues for limitation for Plaintiff's claims. Additionally, the requested documents are protected from disclosure under various state and federal banking and privacy laws.

It is unreasonable, and frankly, a waste of time and resources of all involved, including this Court and the other district courts where motions to quash have been filed, to allow Plaintiff to obtain any information from BPA and StoneTurn or depose BPA and StoneTurn, because the Subpoenas seek wholly irrelevant information, and are burdensome, harassing, and grossly disproportionate to the claims at issue in this case. Furthermore, Ocwen has already objected to producing the requested

---

for Protective Order in this Court contemporaneously with the filing of the Motion to Quash in the Southern District of New York. (*See* Doc. 112.)

71525432v.3 1006335/01554

documents and information, and Plaintiff has not obtained any order from this Court compelling the disclosures to date.

Plaintiff is clearly abusing the discovery process and using this case as an improper fishing expedition. There is no reasonable explanation or justification for Plaintiff seeking information from non-party auditors whose reports concern borrowers of another state (New York) that were completed several years ago. Accordingly, Ocwen seeks an order protecting the disclosure of the requested documents and quashing the subpoenas to BPA (Doc. 110) and StoneTurn (Doc. 114), together for purposes of this Motion, the "Subpoenas") for the reasons more specifically set forth below.

## RELEVANT FACTUAL BACKGROUND

On November 3, 2016, Plaintiff filed a single-count FCRA Complaint against Ocwen. (Doc. 1.) On January 16, 2017, Plaintiff amended his Complaint adding claims for negligence and alleged violations under the FDCPA and RESPA. (Doc. 16.) Ocwen moved to dismiss the Amended Complaint, and in response, Plaintiff requested and obtained leave to amend his Complaint a second time. (Doc. 35, 39.) After further 12(b)(6) briefing, the Court entered an order dismissing Plaintiff's negligence claim, but allowing the RESPA, FDCPA, and FCRA claims to proceed to discovery. (Doc. 70.)

71525432v.3 1006335/01554

The parties exchanged written discovery in January 2019. Shortly after Ocwen served its objections and responses to Plaintiff's first set of written discovery, Plaintiff's counsel served a second set of written discovery. (Doc. 92.) While the first round of discovery requests was markedly voluminous with over 120 separate requests, the second set of discovery was absurd: 168 requests for admissions and 28 additional document requests.[3] What's more, **none** of the nearly 200 additional discovery requests directly relate to Plaintiff or his mortgage loan. Rather, the nearly 200 additional discovery requests in the second set of discovery seek information relating to audits, Ocwen's servicing platforms, including REALServicing, manuals and related documents for Ocwen's servicing platforms, information about any technical defects or processing issues, and various internal policies and procedures. (Doc. 112-2, at pp. 2-12.)[4] Also included are requests concerning a Consent Order entered into between Ocwen and the NY DFS on December 19, 2014.[5] Specifically, Plaintiff requests that Ocwen produce "all reports by the Compliance Monitor

---

[3] In total, Plaintiff has served (and Ocwen has timely responded to) 32 interrogatories, 230 requests for admissions, and 62 document requests to date.

[4] True and correct copies of the relevant requests and objections are attached to Ocwen's Motion for Protective Order relating to the NY DFS Subpoena at Doc. 112-2. The NY DFS Subpoena demanded the production of "Compliance Monitor and Targeted Examination Reports enforcing the Consent Orders entered between [NY DFS] and Ocwen Financial Corporation and Ocwen Loan Servicing, LLC including those entered on 9/15/2011, 12/15/2011, 12/5/2012, and 12/19/2014." (Doc. 104.)

[5] A true and correct copy of the December 19, 2014, Consent Order is attached to Ocwen's Motion for Protective Order relating to the NY DFS Subpoena at Doc. 112-1.

71525432v.3 1006335/01554

identified in ¶ 9" of the December 19, 2014, Consent Order, and "all reports by the Operations or Compliance Monitors generated" pursuant to the December 19, 2014, Consent Order. (Doc. 112-2, p. 12.) BPA and StoneTurn served as the "Compliance Monitors" pursuant to the Consent Order between NY DFS and Ocwen dated December 5, 2012.

Notably, none of these requests has any bearing on whether Plaintiff violated RESPA, FCRA, or the FDCPA—which are the only operative claims in this case. Nor does Plaintiff's Complaint allege any facts suggesting a problem with Ocwen's REALServicing platform as it relates to his loan, or that he suffered from any technical deficiencies, or that his loan was part of any "audit" or "compliance monitor" report. Consequently, Ocwen objected to Plaintiff's discovery requests on multiple grounds, including burdensomeness, relevancy, not appropriately limited in time or tailored in scope, broadness, disproportionality, outside the applicable statute of limitations, and confidentiality. Ocwen also objected on the grounds that Plaintiff is on an improper fishing expedition that violates the spirit and rules of discovery.

Undeterred, Plaintiff issued non-party subpoenas to NY DFS, BPA and StoneTurn. The Subpoenas to BPA and StoneTurn seek the following documents and testimony relating thereto:

> 1. All Audits conducted in connection with **any** Consent Order entered by Ocwen with the New York Department of Financial Services (NYDFS).

2. All Ocwen borrower electronic or printed loan files produced or provided to [BPA/StoneTurn] by Ocwen for audits in connection with the Consent Orders identified at ¶ 1, supra.

3. All audits, reports, evaluations, business plans (or the like), summaries or communications generated or received by [BPA/StoneTurn] regarding the violations, complaints, problems, or compliance issues reported or discovered by [BPA/StoneTurn] during and after the audits of Ocwen borrowers' files pursuant to the Consent Orders identified at ¶ 1, supra.

4. All documents and communications that refer or relate to Fred Ponder.

5. All communications and other documents, whether electronic or printed, which evidence or relate to Ocwen's compliance with federal or state laws; including, but not limited to, the Consent Orders identified at ¶ 1, supra.

(Doc. 110 and Doc. 114, pp. 1-2, emphasis added.)

Again, these requests seek information that is entirely irrelevant to Plaintiff's claims. Furthermore, BPA's and StoneTurn's involvement with Ocwen solely relates to the December 2012 Consent Order with NY DFS, which impacts **only New York borrowers**. Plaintiff is not a New York borrower. He is a Georgia resident, with a Georgia loan, on a Georgia property. Further, BPA's and StoneTurn's engagement expressly provides that any access either of them had to Ocwen systems or information was specifically for use during the engagement and is considered confidential supervisory information pursuant to New York's Banking Law §§ 36.10 and Regulations, 3NYCRR, and any other applicable state and federal laws and regulations. Upon termination of the engagement, BPA and StoneTurn were

7

required to return all documents and material belonging to Ocwen, NY DFS, or any other regulator. Therefore, they should not have any documents beyond what it has returned to Ocwen or NY DFS. Finally, per the terms of their engagement, the Compliance Monitors were engaged for a period of 2 years, starting in June 2013. Thus, BPA's and StoneTurn's involvement with Ocwen also falls outside the applicable statutes of limitation for the statutory claims at issue.

Viewed in context with Plaintiff's other discovery efforts, it is clear that Plaintiff and his counsel are simply on a mission to harass Ocwen, NY DFS, BPA, StoneTurn, and others with irrelevant, obtrusive, grossly disproportionate, and unduly burdensome requests. Ocwen has accommodated relevant, reasonable discovery requests by Plaintiff. However, Ocwen is unwilling to allow Plaintiff to use abusive tactics or to subject it, BPA, or StoneTurn to unreasonable, grossly irrelevant discovery demands, like the Subpoenas in this case. As such, this Court should enter a protective order effectively quashing the Subpoenas.

## ARGUMENT & CITATION TO AUTHORITIES

### I. APPLICABLE LEGAL STANDARD.

Discovery in all matters is limited to only what is relevant to a party's claim or defense or that which is reasonably calculated to lead to the discovery of admissible evidence. FED R. CIV. P. 26(b); *Chudasama v. Mazda Motor Corp.*, 123 F.3d 1353, 1368 (11th Cir. 1997) (explaining claims and defenses determine the

scope of discovery).  A court must "limit the frequency or extent of discovery otherwise allowed by these rules or by local rule if it determines that: (1) the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive; (ii) the party seeking discovery has had ample opportunity to obtain the information by discovery in the action; or (iii) the burden or expense of the proposed discovery outweighs its likely benefit, considering the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the action, and the importance of the discovery in resolving the issues."  FED. R. CIV. P.. 26(b)(2)(C).

## II.  OCWEN HAS STANDING TO CHALLENGE THE NON-PARTY SUBPOENA.

A party has standing to "quash a subpoena directed at a non-party where the party is seeking to protect a personal privilege or right." *Melder*, 2008 WL 1899569, at *2.  Furthermore, a party has standing to challenge a non-party subpoena seeking the same information requested directly from the party.  *Id.*

In this case, Plaintiff seeks many of the same documents from BPA and StoneTurn as it previously did in his Requests for Production issued directly to Ocwen, and in the NY DFS Subpoena (which Ocwen has similarly moved to quash).  Any additional documents demanded from BPA and StoneTurn relate directly to the documents already requested from Ocwen but cover an earlier time period, and they

9

are subject to the same and further objections. Because there currently exists a dispute between Plaintiff and Ocwen concerning the documents to be produced by Ocwen, and the outcome of that dispute potentially impacts the duplicative requests directed at BPA, Ocwen has standing to move to quash the non-party Subpoena to BPA. *See id.* (finding party had standing to quash non-party subpoena seeking documents which were requested directly from the party and were the subject of a discovery dispute); *Langford v. Chrysler Motors Corp.,* 513 F.2d 1121, 1126 (2d Cir. 1975) (upholding lower court's quashing of non-party subpoena in light of motion of party plaintiff where "[t]he materials sought were not only voluminous, but also they had no relevance to the main issues in the case . . .").

## III.    A PROTECTIVE ORDER SHOULD BE ENTERED PRECLUDING THE REQUESTED DISCOVERY.

Under Rule 26, "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense . . . ." FED. R. CIV. P. 26(b)(1). However, a court **must** quash or modify a subpoena if it "requires disclosure of privileged or other protected matter, if no exception or waiver applies" and may quash or modify a subpoena if it discloses certain confidential information. FED. R. CIV. P. 45(c)(3)(A)(iii), (B)(i). To make this determination, courts apply a balancing test, weighing the probative value of the documents sought against the burden of complying with the subpoena, considering the following factors: "relevance of the information requested, the requesting party's need for the documents, the breadth of

the document request, the time period covered by the request and the burden imposed, including the expense and inconvenience to a nonparty to whom a request is made." *Se. Mech. Servs., Inc. v. Brody*, No. CIV.A.1:09CV0086-GETS, 2009 WL 3095642, *3 (N.D. Ga. June 22, 2009).

The decision to enter a protective order is within the court's discretion and does not depend on a legal privilege. *Farnsworth v. Procter & Gamble Co.*, 758 F.2d 1545, 1548 (11th Cir. 1985). Rule 26(c) provides that upon a showing of good cause, a court "may make any order which justice requires to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." Here, both legal privilege and good cause support the entry of a protective order with respect to the Subpoena for several reasons, as explained below.[6]

## A. The Documents Sought Are Not Relevant to Plaintiff's Claims.

The scope of discovery is not without limits. *Oppenheimer Fund v. Sanders*, 437 U.S. 340, 351-52 (1978) (citing *Hickman v. Taylor,* 329 U.S. 495, 501 (1947)). Here, Plaintiff's Subpoenas seek testimony and documents that could not possibly concern "any nonprivileged matter that is relevant to any party's claim or defense."

---

[6] "The scope of discovery under a Rule 45 subpoena is the same as that permitted under Rule 26." *Cty. of Niagara v. Netherlands Ins. Co.*, 14-CV-737A(F), 2017 WL 2059808, at *3 (W.D.N.Y. May 15, 2017), *aff'd* at 14-CV-737-A(F), 2017 WL 3917133 (W.D.N.Y. Sept. 7, 2017). *See also Bahrami v. Maxie Price Chevrolet-Oldsmobile Inc.*, No. 1:11-CV-4483-SCJ-AJB, 2013 WL 3800336,a t *3 (N.D. Ga. June 19, 2013) ("Discussion of the scope of discovery allowed under a subpoena requires consideration of Rule 26."); *Brody*, 2009 WL 3095642 at *2.

71525432v.3 1006335/01554

FED. R. CIV. P. 26(b)(1). Liability in this case does not turn on audits conducted in connection with Consent Orders entered into between Ocwen and the NY DFS, Ocwen borrower files in New York—entirely unrelated to Plaintiff's loan, or documents from the years prior to Ocwen's servicing of Plaintiff's loan. Moreover, the testimony and documents sought relate directly to an investigation by the New York Department of Finance, but Plaintiff is from Georgia and the mortgage loan at issue relates to real property in the State of Georgia. The Consent Orders with NY DFS and any related reports or underlying documents have nothing to do with Plaintiff, his loan, or the claims asserted under RESPA, the FDCPA or the FCRA.

Furthermore, the requested documents fall outside the applicable statutes of limitation of the claims at issue. Plaintiff, who filed his FCRA claim in November 2016, and his RESPA and FDCPA claims in January 2017, attempts to reach far back into the past to obtain compliance and examination reports related to consent orders entered into in New York in 2011 and 2012 – well before any of his claims could have accrued based on the applicable statutes of limitation.[7] *See McCarley v. KPMG Int'l*, 293 Fed. Appx. 719, 722 (11th Cir. 2008) (noting RESPA's three-year statute of limitation); *Kelley v. Law*, 1:13-CV-266-WSD-ECS, 2013 WL 12382670,

---

[7] It is undisputed that Ocwen begin servicing the subject loan in November 2011; yet Plaintiff seeks documents from NY DFS (and now BPA and StoneTurn) prior to that time beginning of the servicing of the loan as he requests documents related to the September 2011 Consent Order.

at \*2 (N.D. Ga. Apr. 29, 2013) (dismissing FDCPA claim because it concerned a communication that fell outside "the one-year statute of limitations for FDCPA claims and citing 15 U.S.C. § 1692k(d)); *Lamb v. Verizon Wireless Servs., L.L.C.*, 284 Ga. App. 696, 697, 644 S.E.2d 412, 413 (2007) (reciting FCRA's two year statute of limitation). Even the December 2014 Consent Order described in the NY DFS subpoena (Doc. 104) and any related audits, summaries, reports, and the like fall outside the scope of relevant information because Plaintiff's RESPA claims concern the timing and response to his purported Notices of Error and Qualified Written Requests to Ocwen, which are clearly governed by the statute itself.

In the Second Amended Complaint, Plaintiff alleges that Ocwen RESPA by failing to (1) acknowledge receipt of Plaintiff' inquiries, qualified written requests, and notices of error within five (5) days of receipt, (2) conduct a reasonable investigation into errors raised by Plaintiff in a notice of error, (3) provide Plaintiff with a written response regarding the outcome of Ocwen's investigation into the errors and issues raised by Plaintiff, (4) provide Plaintiff with a written statement as to Plaintiff's right to request documentation relied on by Defendant in reaching its determination within thirty (30) days of receipt of a notice of error, (5) conduct a reasonable investigation absent receipt of additional information from Plaintiff as a condition precedent to conducting a reasonable investigation into errors and issues raised by Plaintiff. (Doc. 53, pp. 23-26.) None of these issues are determined or

impacted by any compliance review or examination conducted by NY DFS, StoneTurn, or BPA. Rather, any liability under RESPA turns purely on whether Ocwen complied with its statutory obligations. BPA and StoneTurn had no involvement with compliance monitoring outside the scope of the directives issued in December 5, 2012 Consent Order; therefore any information BPA or StoneTurn is irrelevant and would fall far outside the relevant time period for Plaintiff's claims. Finally, but equally important, the burdens of production are wholly disproportionate to any benefit of disclosure, considering the limited damages permitted under the three statutory claims at issue.

Rule 26 commands that the Court:

> "must limit the frequency or extent of discovery otherwise allowed by these rules . . . if it determines that . . . the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive; . . .[or] the burden or expense of the proposed discovery outweighs its likely benefit, considering the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the action, and the importance of the discovery in resolving the issues.

FED. R. CIV. P. 26(b)(2)(C); *United Parcel Svc. of Am., Inc. v. The Net, Inc.*, 222 F.R.D. 69, 71 (E.D.N.Y. 2004) ("[T]he maturation of Rule 26(b)(2) over several decades allows judges to use the limitations of Rule 26(b)(2) with increasing frequency and with an eye toward equity."). *See also Shannon v. Albertelli Firm, P.C.*, No. 14-11832, 2015 WL 2114055, at *4 (11th Cir. May 7, 2015) ("[W]e agree

with the district court that [the] discovery requests were simply a 'fishing expedition' whose burdens or expenses 'outweigh[ed] [their] likely benefit.'").

Courts in this Circuit routinely limit or quash discovery requests, including non-party requests, where, as here, the discovery sought is not relevant to the claims or beneficial to the Court's determination of the legal issues. *See, e.g., Hernandez v. Hendrix Produce, Inc.*, CV613-053, 2014 WL 953503, at *2-3 (S.D. Ga. Mar. 10, 2014) (granting motion to quash subpoena seeking information unrelated to core focus of their case); *Alig-Mielcarek v. Jackson*, 286 F.R.D. 521, 527 (N.D. Ga. 2012) (declining to enforce broad discovery of private documents without limitations where requests were "like a bulldozer that levels an entire hill in the hopes of finding some specks of gold"); *Rosenbaum v. Becker & Poliakoff, P.A.*, No. 08-cv-81004, 2010 WL 623699, at * 9 (S.D. Fla. Feb. 23, 2010) (explaining Rule 26(b)(2)(C) imposes "a 'rule of proportionality' which requires discovery to be restricted where the burden or expense outweighs the proposed benefit"). The same principles apply here. This Court should enter an order quashing the Subpoenas because the information sought is not relevant, and it is grossly disproportionate considering the limited scope of the claims asserted and damages available.

## B. State Laws Preclude Disclosure of the Documents.

Second, a protective order should be entered because the materials and the documents requested are confidential in nature and are protected from disclosure by

state Banking laws.[8]  New York Banking Law § 36 provides a broad protection from disclosure for all documents concerning or arising from a regulatory examination or investigation:

> All reports of examinations and investigations, correspondence and memoranda concerning or arising out of such examination and investigations . . . ***shall be confidential communications, shall not be subject to subpoena and shall not be made public*** unless, in the judgment of the superintendent, the ends of justice and the public advantage will be subserved by the publication thereof, in which event the superintendent may publish or authorize the publication of a copy of any such report or any part thereof in such manner as may be deemed proper or unless such laws specifically authorize such disclosure.

NY BANKING LAW § 36(10) (emphasis added).  New York courts have consistently enforced these protections from disclosure of regulatory supervisory materials. *Alaska Elec. Pension Fund v. Bank of Am. Corp.*, 14-CV-7126 (JMF), 2016 WL 6779901, at *5 (S.D.N.Y. Nov. 16, 2016) (denying motion to compel production of documents, applying N.Y. Banking Law § 36(10), and "New York Banking Law protects DFS materials from disclosure."); *Clark v. Flynn*, 9 A.D.2d 249, 252 (N.Y. App. Div. 1959) (holding that letter from Superintendent to examined bank regarding the Department's report and recommendation fell within the scope of documents subject to the New York banking privilege); *see also Matter of Estate of Saxon*, 176 Misc. 2d 724, 727, 673 N.Y.S.2d 625 (N.Y. Sur. 1998) ("witness by law

---

[8]  Ocwen has already objected to the production of such documents in discovery on these and other grounds.  (Doc. 112-2.)

[was] prohibited from revealing any aspect of the bank examiner reports conducted by the Superintendent").

A closer examination of the Subpoenas to BPA and StoneTurn demonstrates the materials sought are protected from disclosure by the New York Banking Law. Among other things, the subject Subpoenas seek audit files and related documents in connection with any Consent Orders entered into by Ocwen with the NY DFS, all Ocwen files provided to BPA or StoneTurn by Ocwen for the audits in connection with said Consent Orders, and all documents relating to Ocwen's compliance with federal or state laws. These documents would include information pertaining directly to NY DFS examinations or investigations. As such, they should not be subject to subpoena under the New York Banking Law. NY Banking Law § 36(10).

Likewise, the Georgia statutes offer similar protections from disclosure of documents relating to regulatory investigations conducted by the Georgia Department of Banking and Finance. *See Fed. Ins. Deposit Corp. v. Briscoe*, Civil Action No. 1:11-cv-2303-SCJ, 2014 WL 12775663, at *3 (N.D. Ga. Feb. 4, 2014) (denying motion to compel documents relating to examination and reports from non-party Ga Dep't of Banking and Finance). Under O.C.G.A. § 7-1-70, all records of the Department are confidential. In fact, certain documents are never subject to disclosure absent a specific order from a court which "holds the public interest in the safety and soundness of the banking system and its regulation to be outweighed by

17

other interests of justice." O.C.G.A. § 7-1-70(c)(3).  This category includes internal investigations, documents, and notes which reflect the deliberative processes of employees; advisory opinions; notes and memos of the Department that are not purely factual in nature; and other similar materials or notes.  *Id.*

Similarly, Florida banking law provides that "reports of examinations, operations, or condition, including working papers, or portions thereof, prepared by, or for the use of, the [Office of Financial Regulation] or any state or federal agency responsible for the regulation or supervision of financial institutions in this state are confidential . . . ." Fla. Stat. § 655.057(2).

Ultimately, whether Ocwen violated its statutory obligations to Plaintiff—a Georgia resident—under the FCRA, FDCPA or RESPA, as alleged in the underlying case does not turn on whether Ocwen complied with the Consent Orders issued by NY DFS.   Any acts by BPA and StoneTurn as the compliance monitors for the December 2012 Consent Order do not involve Plaintiff (who is not a New York borrower) or change Ocwen's obligations under the referenced statues.  Moreover, the time period when BPA and StoneTurn were involved is outside the statutes of limitations for the alleged claims.  Because the requested testimony and documents do not alter Ocwen's federal statutory responsibilities, this information is not germane to the issue of Ocwen's liability here.  As such, a protective order should be entered in Ocwen's favor with respect to the Subpoenas.

**C.    The Federal Banking Examination Privilege Protects The Disclosure of the Requested Documents.**

A protective order should also be entered because the documents sought are privileged pursuant to the federal banking examination privilege. "Federal courts 'have long recognized that the report of a bank examiner is protected by a qualified privileged.'" *Rouson ex rel. Estate of Rouson v. Eicoff*, No. 04-CV-2734 ARR KAM, 2006 WL 2927161 (E.D.N.Y. Oct. 11, 2006) (citing *In re Subpoena Served upon Comptroller of Currency*, 967 F.2d 630, 633 (D.C. Cir. 1992)); *In re Franklin Nat'l Bank Sec. Litig.*, 478 F. Supp. 577, 580-82 (E.D.N.Y. 1979). This privilege, often referred to as the bank examination privilege, "is firmly rooted in practical necessity," *In re Subpoena*, 967 F.2d at 633, and is "'designed to promote the effective functioning of an agency by allowing the agency and the regulated banks the opportunity to be forthright in all communications.'" *Mktg. Investors Corp. v. New Millennium Bank*, No. 3:11-CV-1696-D, 2012 WL 1357502, at *7 (N.D. Tex. Apr. 16, 2012) *report and recommendation adopted in part, rejected in part on other grounds*, No. 3:11-CV 1696-D, 2012 WL 2900606 (N.D. Tex. June 5, 2012) (citing *In re Bankers Trust Co.*, 61 F.3d 465, 471 (6th Cir. 1995)).

The bank examination privilege "protects communications between banks and their examiners in order to preserve absolute candor essential to the effective supervision of the banks." *Linde v. Arab Bank, PLC*, No. 04-2799, 2009 WL 3055282, at *1 (E.D.N.Y. Sept. 21, 2009) (citations omitted). The privilege "covers

19

the opinions and recommendations of bank examiners and the banks' responses to the examiners' inquiries." *Id.* (citing *Bankers Trust*, 61 F.3d at 471; *In re Subpoena*, 967 F.2d at 633-34; *Bank of China v. St. Paul Mercury Ins. Co.*, No. 03-9797, 2004 WL 2624673, at *4 (S.D.N.Y. Nov. 18, 2004)); *see also Rouson*, 2006 WL 2927161 at *4 (citing *Franklin Nat'l Bank*, 478 F. Supp. at 581). Moreover, "[c]ourts have justified the privilege because of the distinctively continuous and informal process of bank regulation, which especially requires candor from regulated entities." *FHFA v. JPMorgan Chase & Co.*, 978 F. Supp. 2d 267, 273 (S.D.N.Y. 2013) (citations omitted). Indeed, the court in *JPMorgan Chase* stated:

> Bank safety and soundness supervision is an iterative process of comment by the regulators and response by the bank. The success of the supervision therefore depends vitally upon the quality of communication between the regulated banking firm and the bank regulatory agency. This relationship is both extensive and informal . . . in the sense that it calls for adjustment, not adjudication . . . . These conditions simply could not be met as well if communications between the bank and its regulators were not privileged.

*Id.* (quoting *In re Subpoena*, 967 F.2d at 633).

Here, the Subpoenas seek documents that would contain the opinions, recommendations, and analyses of BPA and StoneTurn in their roles as the Compliance Monitors for the December 2012 Consent Order. The cases make it clear that the banking examination privilege protects "agency opinions and recommendations and banks' responses thereto." *Bankers Trust*, 61 F.3d at 471. *See also FHFA v. HSBC N. Am. Holdings Inc.*, No. 11-6189, 2014 WL 1909446, at *3

(S.D.N.Y. May 13, 2014) (holding that bank examination privilege applied to documents sent to banking regulator reflecting items to discussed at a joint meeting, documents providing narrative answers to regulator's questions, and documents providing qualitative reviews of the regulated entities operations). Thus, the BPA and StoneTurn documents are protected from disclosure by the banking examination privilege. Plaintiff has not and cannot show any good cause to override the privilege in this case.

## III. IF THE COURT IS NOT INCLINED TO ENTER THE PROTECTIVE ORDER REQUESTED, THE COURT SHOULD MODIFY THE SUBPOENA AND REQUIRE DOCUMENTS TO BE PRODUCED UNDER SPECIAL CONDITIONS.

If the Court ultimately decides not to enter a protective order and/or the documents sought from BPA and StoneTurn are ordered produced pursuant to the Subpoenas by this Court, the Florida District Court, or the Massachusetts District Court, this Court should enter an order providing that any documents produced be limited to an appropriate time period and to allow for redactions of irrelevant, confidential, and/or proprietary information that is unrelated to Plaintiff's statutory claims in the underlying case. Further, such documents should be produced subject to an agreed upon confidentiality order. *Farnsworth*, 758 F.2d at 1548 ("Rule 26(c) gives the district court discretionary power to fashion a protective order . . . which does not depend on a legal privilege.").

71525432v.3 1006335/01554

This Court may issue an order "forbidding inquiry into certain matters." FED. R. CIV. P. 26(c)(1)(D). A protective order issued pursuant to Fed. R. Civ. P. 26(c) is based on the standard of "good cause," which calls for a "sound basis or legitimate need" to limit discovery of the subject information. *In re Alexander Grant & Co. Litigation*, 820 F.2d 352, 356 (11th Cir. 1987); Fed. R. Civ. P. 26(c)(1) ("[A] court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense."). Here, if the Court ultimately decides that certain of the documents should be produced or certain testimony be obtained from BPA or StoneTurn, the Subpoenas should be limited to only that which is relevant to the claims alleged, within a timeframe that is not barred by the statutes of limitation, with all other extraneous or non-applicable information redacted, and any documents should be subject to an agreed confidentiality order.

## CONCLUSION

In sum, there is nothing relevant to either party's claims or defenses in this case that Plaintiff could obtain from the testimony or the production of the documents demanded in the Subpoenas. Moreover, the subpoenaed documents are highly confidential and protected by state and federal banking and regulatory laws. Accordingly, this Court should enter a protective order and quash the non-party Subpoenas to BPA and StoneTurn. In the alternative, Ocwen respectfully requests that this Court enter an order limiting the Subpoenas to an appropriate time period

71525432v.3 1006335/01554

and to allow for redactions of irrelevant, confidential, and/or proprietary information.

## CERTIFICATE OF COMPLIANCE

Pursuant to Local Rule 7.1(D), I hereby certify that the foregoing motion has been prepared in compliance with Local Rule 5.1 (B) and (C), using 14-point Times New Roman font.

Dated: May 13, 2019.

**LOCKE LORD LLP**

*s/ John Michael Kearns*
Elizabeth J. Campbell
Georgia Bar No. 349249
Email: *ecampbell@lockelord.com*
John Michael Kearns
Georgia Bar No. 142438
Email: *john.kearns@lockelord.com*
Terminus 200, Suite 1200
3333 Piedmont Road NE
Atlanta, GA 30305
(404) 870-4600
(404) 872-5547 (fax)

*Attorneys for Ocwen Loan Servicing, LLC*

71525432v.3 1006335/01554

## CERTIFICATE OF SERVICE

I certify that I have this 13th of May, 2019, electronically filed the foregoing **OCWEN LOAN SERVICING, LLC'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION FOR PROTECTIVE ORDER TO QUASH PLAINTIFF'S NON-PARTY SUBPOENAS TO BOSTON PORTFOLIO ADVISORS, INC. AND STONETURN GROUP, LLP** with the Clerk of Court using the CM/ECF system, which will electronically serve the same on Plaintiff's counsel of record listed below:

> Orion Gregory Webb
> Smith Welch Webb & White, LLC
> Suite 300
> 280 Country Club Drive
> Stockbridge, GA 30281
> *owebb@smithwelchlaw.com*

> */s/ John Michael Kearns*
> John Michael Kearns
> Georgia Bar No. 142438
>
> *One of the Attorneys for Defendant Ocwen Loan Servicing, LLC*

71525432v.3 1006335/01554