## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA

| | | |
|---|---|---|
| **FRED PONDER,** | ) | |
| | ) | |
| **Plaintiff,** | ) | **Civil Action No.** |
| | ) | |
| **v.** | ) | **1:16-cv-04125-ODE-LTW** |
| | ) | |
| **OCWEN LOAN SERVICING** | ) | |
| **LLC, et al.,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## PLAINTIFF'S RESPONSE TO DEFENDANT OCWEN LOAN SERVICING, LLC'S MOTION FOR PROTECTIVE ORDER AND BRIEF IN SUPPORT THEREOF

Comes now Plaintiff, Fred Ponder, through counsel, and files tis Response to Defendant Ocwen Loan Servicing, LLC's Motion for Order Protecting Ocwen from Plaintiff's 30(b)(6) Deposition Notice and hereby shows this Court as follows:

### I.    Factual and Procedural Background

Plaintiff filed his Complaint on November 3, 2016. (Doc. 1). Ocwen has managed to delay the litigation of this matter since its inception. Once the parties finally were able to begin discovery, Plaintiff was forced to motion to extend the discovery period due to Defendant's refusal to participate in discovery. (Doc. 93). Plaintiff propounded multiple requests for admissions to Defendant in an effort to narrow the scope of discovery, yet Defendant objected and refused to respond fully to every request. See Responses and Objections to Requests for Admission attached

1

as Exhibits 1 and 2. In an effort to further delay this matter, Defendant has filed three motions to quash and four motions for protective orders, nearly universally filed at the end or after business hours the last business day before the date for which a deposition or subpoena was noticed.

In this particular instance, Plaintiff originally reached out to Defendant to request dates for Defendant's 30(b)(6) deposition on January 11, 2019. See email requesting dates for deposition attached as Exhibit 3. After Defendant refused to respond to Plaintiff's e-mail requesting dates, Plaintiff unilaterally noticed the 30(b)(6) deposition for late February. (Doc. 86). The notice includes 83 topics to which Ocwen did not object for nearly four months, including

> 4. All affirmative defenses asserted by the Deponent.
> …
> 7. Any Consent Orders entered into between Deponent and any regulatory agency such as the CFPB related to credit reporting, debt collection, or Mortgage Servicing.
>
> 8. The Nature of any Consent Orders identified in item 7, *supra*.
>
> 9. The content of any Consent Orders identified in item 7, *supra*.
>
> 10. The policies, procedures and practices put in place by the Deponent to insure that the reinvestigations initiated by Plaintiff would result in accurate credit reporting relating to Plaintiff.
> …
> 12. The net worth of the Deponent.
>
> 13. The annual revenue of the Deponent.
>
> 14. The net income of the Deponent.
> …

2

22. The existence, nature, and content of any training provided to your employees or agents conducting reinvestigations.

…

24. The identity, content, and number of computer systems used to maintain data on consumers, their accounts, collections or applications and the access given to each of those systems.

…

26. The existence and content of any policy or procedure for handling credit reporting reinvestigations.

…

41. The procedures in place at the Deponent to insure that false or inaccurate information is not reported on any consumer's credit report or to any credit reporting agency.

…

47. The policy, practice, and procedure relating to incomplete reporting of the available data fields or segments reported to credit reporting agencies.

…

70. All suits filed against Ocwen since 2012 alleging violations of the Fair Debt Collection Practices Act, the Fair Credit Reporting Act, or the Real Estate Settlement Procedures Act.

…

72. Ocwen's internal procedures in place to ensure compliance with the Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. § 2601, et seq., and the training of your employees to comply with same, and identify any documents, communications, training materials, handbooks, form documents, checklists, etc. that evidence these procedures and describe the internal procedures, if any, for identifying and addressing any noncompliance.

73. The process for validating records and account documents received by Ocwen from Litton Loan Servicing regarding the account bearing the Deponent's name at issue in this case.

…

76. How the account bearing the Deponent's name at issue in this case was serviced during Plaintiff's bankruptcy A05-71427-CRM.

77. The existence and nature of the legal relationship between the Deponent and Litton Loan Servicing.

78. The facts surrounding Ocwen's acquisition of the right to service Plaintiff's Loan from Litton Loan Servicing.

…

83. Payment of funds from Bankruptcy Trustee Nancy Whaley prior to October 15, 2009 to Litton of $14,848.22, or in any amount.

(Doc. 86). The Amended Notice has the same topic list. (Doc. 88).

Due to Defendant's refusal to participate in discovery and initial failure to produce any documents in response to Plaintiff's Requests for Production, Plaintiff was forced to cancel the originally scheduled 30(b)(6) deposition, again requesting that Defendant designate who their 30(b)(6) witness would be and to identify a convenient time and location for said deposition. See Second Request for a 30(b)(6) date attached as Exhibit 4. While Defendant refused to identify a witness or provide a date and time, Defendant did specify that the deposition must occur at Defendant's Counsel's office. See demand that Deposition of Ocwen occur at its Counsel's Office attached as Exhibit 5. The Second Amended Notice of Deposition of Ocwen was filed on April 25, 2019. (Doc. 108). It noticed the 30(b)(6) deposition of Ocwen for May 15, 2019 and was served along with a subpoena duces tecum. (Doc. 108). While the Second Amended Notice of Deposition of Ocwen contains a lengthier list of topics to be covered at the scheduled deposition, the scope of these topics remain the same as in the deposition notices filed in January and February and merely provides more specificity and clarity than the original notice. (Doc. 108).

4

On Thursday, May 9, 2019, at 7:04pm, 3 business days before the 30(b)(6) deposition of Ocwen was scheduled to occur, Counsel for Defendant contacted Plaintiff's Counsel via e-mail to advise that the date and time did not work for Defendant. A copy of Defendant's Counsel's May 9, 2019 e-mail is attached as Exhibit 6. Defendant's Counsel provided a recitation of prior objections to other discovery that had the same topics in the deposition notice, and then made specific objections to 42 groups of documents listed in the Subpoena Duces Tecum and, while outlining broad objections to the topics covered in Plaintiff's Interrogatories and Requests for Production, states that, "[t]his is not intended to be an exhaustive list of objections." Ex. 6. The e-mail further states that while they would be happy to schedule a meet and confer, Defendant's counsel would not provide alternative dates and locations for the deposition until the issues with the topics and list of documents have been addressed. Ex. 6 Defendant then stated that it would be moving for a protective order if the parties were not able to resolve the matter. Ex. 6.

The next day, on Friday, May 10, 2019 at 7:01am, Plaintiff's Counsel responded stating, "[w]e have been asking you for about half a year for dates for a 30(b)(6) deposition and you have ignored our requests. I advised you that we would have to just notice one, if we did not receive dates. Now, less than two weeks after the end of the extended discovery period and fourteen days after Plaintiff noticed this deposition, you are telling us that you and your client are unavailable. We have

no other date to take the deposition, so we cannot agree to move it." A copy of Plaintiff's Counsel's May 10, 2019 e-mail is attached as Exhibit 7. Due to a conflict in Plaintiff's Counsel's schedule, Plaintiff was unable to schedule a meet and confer conference until the next week, on Monday or Tuesday. Defendant's counsel e-mailed Plaintiff's counsel on Monday evening stating that they were too busy to meet and confer. See Defendant's email stating it would not meet and Confer on May 13, 2019 attached as Exhibit 8. Plaintiff's counsel was available at that time to meet and confer, as he had indicated that he would make every effort to be in Exhibit 7.

On reviewing Defendant's boilerplate objections in Exhibit 6 in preparation for a meet and confer, Plaintiff determined that more clarity of Defendant's concerns was needed for Plaintiff to understand Defendant's position. Plaintiff's Counsel e-mailed Defendant's Counsel on Tuesday, May 14, 2019 at 10:38 am to request that Defendant's Counsel provide Plaintiff with an actual list of each topic and production request objected to and a clear statement of the grounds for the objection to help the parties work together to narrow the scope of the requests. Plaintiff's Counsel's May 14, 2019 e-mail is attached as Exhibit 9. In response, Defendant's Counsel sent an e-mail at 2:33 pm stating, "I am not going to charge my client and go through the time and expense to make specific objections to each of the 180 topics, when the large majority of them are not relevant and you are refusing to

6

indicate any willingness to compromise. Furthermore, we view your email as a refusal to meet & confer in good faith. We will advise the Court accordingly, and proceed with filing a protective order." Defendant's May 14, 2019 e-mail is attached as Exhibit 10. In response, Plaintiff's Counsel sent an e-mail stating,

> At no point have we stated that we are unwilling to meet and confer. We simply asked that if you have legitimate objections to our topics and request that you provide us with that information in advance of such conference. Otherwise, how can you expect us to be prepared to respond and have a productive conversation? Considering the history of this case, this is a more than reasonable request and I have no doubt the court will see it that way. If you file a motion for protective order you are going to have to lay out in writing your specific objections to each topic and request you find objectionable. As it stands currently, the first time we will get written notice of your specific objections will be when we are served with a copy of the filed protective order.

Plaintiff's e-mail is attached as Exhibit 11. After sending this email, Defendant's Counsel called Plaintiff's Counsel and again refused to make specific objections to the topics noticed.

Plaintiff's Counsel did not provide any further clarification of its objections until May 15, 2019 at 7:47 am, after Defendant's Motion for Protective Order was filed. Defendant's May 15, 2019 e-mail is attached as Exhibit 12. It was in this e-mail that Defendant's Counsel stated, "[i]n light of our objections and our motion, however, the deposition is not going forward today. Please do not appear at our office. If you insist on doing so after we have advised you not to appear, we will be forced to alert building security." Ex. 12.

## II.   Argument and Citation of Authority

It is improper for Defendant to delay a 30(b)(6) deposition for four months, then object just before the deposition, refuse a good faith conference to narrow the scope of the deposition, and then threaten Plaintiff's counsel if they appear for the deposition. See Ecclesiastes 9:10-11-12, Inc. v. LMC Holding Co., 497 F.3d 1135, 1138 (10th Cir. 2007) (stating that good faith requires the responding party to promptly raise any concerns about the notice. A party is not allowed to delay scheduling a deposition and then object when the deposition approaches. So that a four-month delay before objecting was not in good faith.).

> Rule 30(b)(6) requires that a notice of deposition directed at an organization 'describe with reasonable particularity the matters for examination.' Unlike the Rules governing requests for production of documents, interrogatories and requests for admission, Rule 30 does not explicitly authorize an organizational deponent to serve objections to the notice. Rather, Rule 30 provides for objections in limited circumstances and only during a deposition itself. In particular, the Rule authorized a deponent to refuse to answer a question only if it is necessary to preserve a privilege, to enforce a limitation ordered by the court, or to present a motion to terminate or limit the deposition.

Brooks v. Phoenix Metals Co., 1:15-CV-3612-ODE-JKL, 2016 WL 11588061, at *2 (N.D. Ga. Aug. 19, 2016) *citing* F. R. Civ. P. 30(b)(6) and 30(c)(2). "The weight of the authority holds that a party cannot unilaterally avoid preparing a corporate representative on a topic simply by lodging objections to a 30(b)(6) topic, and instead, the party must seek a protective order." Id. at *2; *See* Beach Mart, Inc. v.

L&L Wings, Inc., 302 F.R.D. 396, 406 (E.D.N.C. 2014); Ft. Worth Emps.' Ret. Fund

v. J.P. Morgan Chase & Co., No. 09 Civ. 3701(JPO)(JCF), 2013 WL 6439069, at *2

(S.D.N.Y. Dec. 9, 2013); Robinson v. Quicken Loans, Inc., No. 3:12-CV-00981,

2013 WL 1776100, at *3 (S.D.W. Va. Apr. 25, 2013); Espy v. Mformation Techs.,

No. 08-2211-EFM-DWB, 2010 WL 1488555, at *3 (D. Kan. Apr. 13, 2010); New

Eng. Carpenters Health Benefits Fund v. First Databank, Inc., 242 F.R.D. 164, 165-

66 (D. Mass. 2007).

Upon receipt of objections to a 30(b)(6) deposition notice, "[t]he requesting

party has the obligation to reconsider its position, narrow the scope of the topic, or

otherwise stand on its position and seek to compel additional answers if necessary,

following the deposition." Brooks v. Phoenix Metals Co., 1:15-CV-3612-ODE-JKL,

2016 WL 11588061, at *2 (N.D. Ga. Aug. 19, 2016) *citing* New World Network

Ltd. v. M/V NORWEGIAN SEA, 05-22916 CIV, 2007 WL 1068124, at *1 (S.D.

Fla. Apr. 6, 2007). However, merely objecting as a means of cancelling a properly

noticed deposition, as Defendant did in this case is improper.

"The party making such a motion must show that 'good cause' exists for the

protective order." Provide Commerce, Inc. v. Preferred Commerce, Inc., 07-80185-

CIV, 2008 WL 360588, at *2 (S.D. Fla. Feb. 8, 2008) citing Fed. R.Civ. P. 26(c).

"In addition to good cause, the court must also satisfy itself that, on balance, the

interests of those seeking the protective order outweigh the interests of the opposing

party." Id. *citing* McCarthy v. Barnett Bank of Polk County, 876 F.2d 89, 91 (11th Cir. 1989). Furthermore, "[r]elevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." Fed.R.Civ.P. 26(b)(1). Defendant has failed to show good cause or that any purported good cause outweighs Plaintiff's interest to conduct the 30(b)(6) deposition. Defendant has not explained why Plaintiff's discovery should be limited to Ocwen's servicing of his mortgage loan, when Defendant is relying on the information in Litton's files to claim the accuracy of the information that it reported on Plaintiff. Further, Defendant cannot explain why Plaintiff cannot conduct discovery regarding pattern and practice or willfulness when these are clear elements of Plaintiff's claims.

Following receipt of Plaintiff's January 11, 2019 Notice, Defendant had a duty:

> (1) To appoint someone it has control over, such as an employee, or a consenting individual, whom the company has prepared to answer questions relating to the information sought by the deposing party; (2) where one person is not capable of answering all related questions, a corporation must appoint as many individuals as necessary to complete the relevant inquiry; and (3) Regardless of how many representatives are appointed, the company must apply good faith principles in its efforts to make a designation.

Wachovia Sec., LLC v. NOLA LLC, 248 F.R.D. 544, 548-49 (N.D. Ill. 2008). Fed. R. Civ. P. 26(c) also requires, "a certification that the movant has in good faith conferred or attempted to confer with other affected parties in an effort to resolve

the dispute without court action." <u>Ecclesiastes 9:10-11-12</u>, 497 F.3d at 1147. Good

faith requires the responding party to promptly raise any concerns about the notice.

<u>Id</u>. A party is not allowed to delay scheduling a deposition and then object when the

deposition approaches. For example, in <u>Ecclesiastes 9:10-11-12, Inc. v. LMC</u>

<u>Holding Co.</u>, the court deemed a four-month delay before objecting not to be in good

faith. <u>Id</u>. at 138. Further, whether a motion is timely is within the discretion of the

court. <u>Landsport Corp. v. Canaramp Corp</u>., 2006 WL 46952567, *3 (M.D. Fla. Apr.

11, 2006). However, a motion filed the night before the deposition is not considered

timely. <u>Id</u>. Rule 37(d) provides for sanctions against the responding party that

disregards its obligations imposed by the discovery rules, even when there is no

existing order specific to discovery. <u>Mitsui & Co. (U.S.A.) v. Puerto Rico Water</u>

<u>Res. Auth</u>., 93 F.R.D. 62, 67 (D.Pr. 1981). The facts in <u>Landsport Corp. v. Canaramp</u>

<u>Corp.</u> are very similar to those in this discovery dispute:

> at 7:40 p.m. on March 9 (the evening before the deposition was
> scheduled), counsel for Black Hills (who is also counsel for
> Plaintiff), filed the instant motion seeking a protective order
> preventing Defendants from obtaining the documents sought in
> the subpoena and preventing the deposition from going forward
> as Black Hills claims the deposition notice does not contain
> adequate specificity regarding the topics to be covered in the
> 30(b)(6) deposition.

<u>Landsport Corp. v. Canaramp Corp.</u>, 2006 WL 46952567, *1 (M.D. Fla. Apr. 11,

2006). "It is not uncommon for courts to sanction attorneys who, in the face of a

deposition notice, wait until eleventh hour before seeking a protective order, thereby

causing the opposing party to incur unnecessary expense." Mungin v. Stephens, 164

F.R.D. 275, 280 (S.D. Ga. 1995) (sanctions for filing motion for protective order

three days before deposition and mailing to opposing counsel). Furthermore,

> The mere filing of a motion for protective order does not relieve a deponent of his duty to appear at a deposition; instead, the duty is relieved only by obtaining either a protective order or an order staying the deposition pending resolution of the motion for protective order. *See, e.g., Id*. ("**unless [the movant] has obtained a court order that postpones or dispenses with his duty to appear, that duty remains**"); *see also In re Toys "R" Us-Delaware, Inc. Fair & Accurate Credit Transactions Act (FACTA) Litig.*, No. ML 08-1980 MMM (FMOx), 2010 WL 4942645, at *3 & n.2 (C.D.Cal. July 29, 2019) (collecting cases, and finding failure to attend deposition was unexcused despite the pendency of a motion for protective order.). Hence, "**[a]t least with regard to depositions, the [protective] order should ordinarily be obtained before the date set for the discovery**." 8A Wright, Miller, & Marcus, Federal Practice & Procedure, § 2035, at p. 151-52 (2010). Any other rule would allow litigants to engage in gamesmanship and "would be an intolerable clog upon the discovery process." *Pioche Mines*, 333 F.2d at 269.

(emphasis added) Nationstar Mortg., LLC v. Flamingo Trails No. 7 Landscapre

Maint. Ass'n, 316 F.R.D. 327, 336-37 (D. Nev. 2016). "The appropriate relief may

be granted pursuant to rule 37(a)(4), Fed.R.Civ.P. An inadequate Rule 30(b)(6)

designation amounts to a refusal or failure to answer a deposition question." Marker

v. Union Fid. Life Ins. Co., 125 F.R.D. 121,126 (M.D.N.C. 1989).

It is obvious that Defendant never had any intention of producing a 30(b)(6)

witness for the properly noticed deposition. Defendant was served with the original

30(b)(6) deposition notice on January 11, 2019, yet Defendant raised no objections

in response to the original 30(b)(6) topic list, even though the scope of topics listed in the original and amended depositions are generally the same. After the February 27, 2019 30(b)(6) deposition was continued due to Defendant's failure to produce a single document in response to discovery—or any substantive answers to interrogatories—Defendant refused to provide any dates for rescheduling, giving Plaintiff no choice but to unilaterally notice the deposition, again. Plaintiff was served with the Second Amended Notice of Deposition on April 25, 2019, which set the date for the 30(b)(6) deposition for May 15, 2019. (Doc. 108). Plaintiff selected the May 15, 2019 date as this was the only date Plaintiff's counsel had available before the close of the extended discovery period on May 21, 2019.

Plaintiff did not hear anything from Defendant regarding the 30(b)(6) deposition until Thursday, May 9, 2019 at 7:04pm, which was less than 3 business days before the scheduled deposition. It was at this time that Defendant's Counsel stated that neither they nor their client would be available on the scheduled date and raised various, non-specific objections to Plaintiff's topic list. Ex. 6. Defendant never had any intention of producing a 30(b)(6) witness and complying with the Amended Notice to begin with, otherwise, Defendant would have reached out about any alleged conflicts or objections much sooner. Defendant's actions in this regard were not in good faith. *See* Ecclesiastes 9:10-11-12, 497 F.3d at 1147 (good faith requires the responding party to promptly raise any concerns about the notice).

13

Defendant was not relieved from appearing for the deposition by filing its protective order as no protective order nor order staying the deposition was obtained prior to the deposition's scheduled start time. *See* Nationstar Mortg., LLC v. Flamingo Trails No. 7 Landscapre Maint. Ass'n, 316 F.R.D. 327, 336-37 (D. Nev. 2016); In re Toys "R" Us-Delaware, Inc. Fair & Accurate Credit Transactions Act (FACTA) Litig., No. ML 08-1980 MMM (FMOx), 2010 WL 4942645, at *3 & n.2 (C.D.Cal. July 29, 2019). Plaintiff attempted to push the deposition forward despite Defendant's objections, but Defendant's Counsel threatened to have Plaintiff's Counsel forcibly removed from their office if they appeared. Ex. 12. In any other case, Plaintiff's Counsel would have moved forward with the deposition in order to obtain a certificate of non-compliance or get it on record that Defendant failed to appear. However, Plaintiff's Counsel, Miranda Hanley, is a new mom and could not risk the possibility of being arrested and not making it home to take care of her infant son. Further, Defendant's counsel has made it clear that they are willing to act unlawfully to obstruct discovery.

Defendant's objections to Plaintiff's requests were very vague and non-specific and Defendant's Counsel clearly expressed in their e-mails that this "is not intended to be an exhaustive list of objections." Ex. 6. Defendant's Counsel claims that they attempted to confer regarding their objections in good faith, but when Plaintiff's Counsel tried to get more information from Defendant's Counsel

14

regarding a full list of their objections and the grounds for said objections, Defendant's Counsel refused to comply and immediately threatened to file a motion for protective order rather than provide Plaintiff's Counsel with this information. Ex. 10. Even if Defendant's Counsel had provided Plaintiff's Counsel with a full list of their objections as requested, Defendant had already stated that they had no intentions of appearing for the noticed deposition, clearly had made not effort to prepare a corporate representative, and has continually refused to designate a 30(b)(6) representative.

Defendant argues that Plaintiff's topic list is "(1) unreasonably broad or (2) the subject of an on-record objection of Ocwen." However, a quick glance over the topic list shows how narrow and specific each topic is. Considering Defendant has objected and refused to respond to almost every single discovery request Plaintiff has propounded, Plaintiff expanded the original 30(b)(6) topic list to make the topics more specific and clear. It seems that Defendant is trying to argue that Plaintiff should drop a topic of discovery on the grounds of Defendant's objections, but that just isn't the case. A 30(b)(6) deposition notice is a different method of discovery and Defendant has an obligation to reassert any previously stated objections or they are deemed waived. Even in Defendant's Motion for Protective Order, Defendant gives examples of various requests that they deem broad or irrelevant, but Defendant seems to leave further objections on the table, which this Court should deem waived.

Plaintiff responds to the specific issues raised by Defendant in their Motion as follows:

- Topic No. 5. Deals with "insurer placed fire insurance during the life of the subject loan." Defendant argues that Defendant is not aware of any such thing and that there are no allegations about "insurer-placed fire insurance" in the operative pleading. First and foremost, discoverability is not determined by whether or not something is specifically pled in the pleadings. Second, this is a typo and should read "forced placed fire insurance." Plaintiff seeks information regarding any forced placed fire insurance Defendant obtained on Plaintiff's loan and charged to Plaintiff's loan account as this is a recurring charge in question on the loan transaction history previously produced by Defendant. This is highly relevant to the mortgage servicing issues raised in this case. Plaintiff was not provided an opportunity to clarify his typo.

- Topics No. 6-10. Defendant argues that these categories concern Ocwen's relationship with Litton Loan Servicing. Defendant admits that Ocwen acquired Litton in 2011. Defendant contends that this information is not discoverable because it pre-dates the statute of limitations of claims asserted by Plaintiff. Discovery is not limited to information within the applicable statute of limitations. The issues with the servicing of Plaintiff's loan account started with Litton and continued after the 2011 acquisition. It is important to

16

understand how the loan was serviced since its inception, not just during the applicable statute of limitations for Plaintiff's claims. Many of Plaintiff's RESPA claims deal with the servicing of Plaintiff's loan and alleged errors that Plaintiff raised with Defendant. If there were obvious loan servicing errors committed during the Litton era, then Defendant had a duty to investigate these issues and correct them. Defendant objects to producing documentation and testimony regarding the servicing of Plaintiff's loan prior to 2011, yet this is the time period in which Defendant contends that Plaintiff missed over 12 months of monthly loan payments and Defendant continues to attempt to collect these amounts from Plaintiff. This information is highly relevant and discoverable.

- Topics 11 and 12. Defendant argues that these requests concern Plaintiff's bankruptcy case, which also pre-dates Defendant's servicing of Plaintiff's loan and is completely irrelevant to this case. However, many of the alleged servicing errors relate to the distribution of funds from Plaintiff's bankruptcy estate and Plaintiff's efforts to bring the loan current following his bankruptcy. The twelve months of payments Defendant contends Plaintiff failed to pay were actually received by Litton. This information is highly relevant.

- Topics 112 and 115. Defendant objects to these topics on the grounds that they relate to internal, confidential, business proprietary materials or regulatory investigations, or the information is protected from disclosure under federal and state banking laws, as well as being entirely irrelevant to Plaintiff's claims. Considering the internal investigations Defendant references were conducted following Defendant entering into various consent orders with several states relating to known servicing errors and systematic deficiencies, errors and deficiencies that may be present in the servicing of Plaintiff's loan, it is important to know the specific instances, whether additional deficiencies were identified during these investigations and whether these deficiencies prevented Defendant's system from functioning properly. This information is highly relevant to Plaintiff's servicing claims and Defendant has failed to cite to any authority in support of Defendant's position that this information is not discoverable or protected by state or federal law.

- Topics 55-66. Defendant argues that these topics concern internal policies, procedures, training and manuals and relate directly to documents and information that Ocwen has already objected to producing. The policies and procedures Defendant had in place to prevent the various credit reporting violations, servicing errors, and RESPA noncompliance at issue in this case

is highly relevant. Defendant's prior objections to providing information responsive to these requests were just as frivolous then as they are now.

- Topics 67-176. Defendant objects to these topics on the grounds that they relate to regulatory documentation, audits, and monitoring, which are irrelevant and are the subject of multiple motions to quash and motions for protective orders. Regulatory documentation, audits, and monitoring conducted on Defendant following various consent orders entered into between Defendant and the several states due to numerous servicing and systematic errors that affected thousands of loans and mortgages nationwide are highly relevant to this litigation, especially if Plaintiff's account was one of those affected by these servicing and systematic errors. This also shows that Defendant was fully aware of these errors and issues when Plaintiff raised issues with the servicing of his loan account. These topics are highly relevant to this litigation, especially Plaintiff's claims for punitive damages and RESPA statutory damages.

- Topics 177-180. Defendant objects to these topics as they concern Defendant's net worth, annual revenue, net income and computer systems from 2013 to present. The broad scope of Defendant's objections makes it difficult to respond. However, information related to Defendant's net worth,

annual revenue, and net income is highly relevant to this case, especially considering Plaintiff has asserted a claim for punitive damages.

Despite Defendant's contentions, Plaintiff is not on a mission to harass and burden Defendant. Plaintiff is just trying to get the discoverable information that he has been seeking from Defendant for months.

## CONCLUSION

Defendant continues to engage in tactics aimed at delaying this litigation and refuses to participate in discovery. Defendant's Motion for a Protective Order was untimely filed without a prior meet and confer in a bad faith effort to avoid the properly noticed deposition by asserting various overly broad objections to the discovery as a whole. Defendant's Motion for a Protective Order should be denied.

Respectfully submitted, this 28th day of May, 2019.

/s/ Orion G. Webb
Orion G. Webb
Georgia Bar No. 479611
Smith Welch Webb & White, LLC
280 Country Club Drive #300
Stockbridge, Georgia 30281
(770) 389-4864 (telephone)
(770) 389-5193 (facsimile)
owebb@smithwelchlaw.com
*Attorney for Plaintiff*

## CERTIFICATE OF SERVICE

I hereby certify that on this day, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system which will send notification of such filing to all attorneys of record.

**SMITH WELCH WEBB & WHITE, LLC**

/s/ Orion Gregory Webb
Orion Gregory Webb
Georgia Bar No. 479611
280 Country Club Drive, Suite 300
Stockbridge, GA 30281
Telephone: (770) 389-4864
owebb@smithwelchlaw.com
**COUNSEL FOR PLAINTIFF**

## CERTIFICATION OF COMPLIANCE WITH LOCAL RULE 5.1

Plaintiff's counsel hereby certifies that this pleading has been prepared with one of the font and point selections approved by the Court in L.R. 5.1.