IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| FRED PONDER, | § § | |
| Plaintiff, | § § | |
| | § | Civil Action File No. |
| v. | § § | 1:16-CV-04125-ODE-LTW |
| OCWEN LOAN SERVICING, LLC, *et al.*, | § § § | |
| | § | |
| Defendants. | § | |

## REPLY MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR PROTECTIVE ORDER

Defendant Ocwen Loan Servicing, LLC ("Ocwen"), hereby files its Reply Memorandum of Law in Support of its Motion for Protective Order seeking to quash the Non-Party Subpoena issued by Plaintiff to the Real Estate Division of the New York Department of Financial Services (Doc. 112), and respectfully shows the Court as follows:

## ARGUMENT AND AUTHORITIES

**I.   Ocwen has standing to make objections and seek this Protective Order.**

Plaintiff argues in his Response (Doc. 118) that Ocwen does not have standing for its motion to quash argument. Plaintiff is wrong. In fact, the District of Massachusetts already found that Ocwen has standing to challenge this non-

party discovery, when it entered an order quashing Plaintiff's non-party subpoena to StoneTurn Group, LLP. (Doc. 128.)  The subpoena to StoneTurn Group sought many of the exact same documents as those in Plaintiff's Subpoena to NY DFS.

As correctly explained by the District Court of Massachusetts, a party has standing to move to quash a non-party subpoena if the information sought by the subpoena implicates a personal right or privilege of the party. *See S.E.C. v. Present*, No. 14-cv-14692, 2016 WL 10998438, at *3 (D. Mass. Mar. 11, 2016) ("A party has standing to quash a subpoena served on a non-party only if he has a personal right or privilege with respect to the requested information.").  This is also true in the Eleventh Circuit.  *See, e.g., Melder v. State Farm Mut. Auto. Ins. Co.*, Civ. Action No. CIVA108CV1274RWSJFK, 2008 WL 1899569, at *2 (N.D. Ga. Apr. 25, 2008); *Auto–Owners Ins. Co. v. Se. Floating Docks, Inc.*, 231 F.R.D. 426, 429 (M.D. Fla. 2005); *Liberacki v. Kroger Co.*, 1:13-CV-00059-JCF, 2013 WL 12063927, at *1 (N.D. Ga. Aug. 9, 2013).

"*[T]he personal right or privilege claimed need not be weighty*: parties need only have *some* personal right or privilege in the information sought to have standing to challenge a subpoena to a third party." *S.E.C. v. Navellier & Assocs., Inc.*, No. 17-cv-11633, 2019 WL 688164, at *2 (D. Mass. Feb. 19, 2019) (citation omitted) (emphasis added). Thus, the District Court of Massachusetts court rightly

concluded that "Ocwen . . . has standing to move to quash the Subpoena because the information sought implicates its personal rights and privileges." (Doc. 128, pp. 3-4.)  *See, e.g., Cabi v. Bos. Children's Hosp.*, No. 15-cv-12306, 2017 WL 8232179, at *3 (D. Mass. June 21, 2017) (finding that defendant had standing to challenge subpoena to third-party that would require production of privileged information that defendant had shared with third-party).  For these reasons and for the reasons set forth in Ocwen's initial Memorandum of Law, Ocwen has standing to move to quash the NY DFS Subpoena.

Regardless, there can be no dispute that Ocwen has standing to seek a protective order under Rule 26(c) against harassing, irrelevant, non-party discovery, as is being sought here.  The law is well established that "[u]pon motion by a party…the court in which the action is pending…may make any order which justice requires . . . ." Fed. R. Civ. P. 26(c), *cited in Melder*, 2008 WL 1899569, at *3.  In *Melder*, the party moved to quash certain non-party subpoenas and simultaneously moved for a protective order, similar to what Ocwen has done here.  *Id.*  The *Melder* Court advised "Rule 26(c), governing protective orders, expressly permits flexibility in cases in which discovery disputes involve multiple courts."  *Id.*  For these same reasons, Ocwen, as a party defendant in this case, has standing to move for a protective order under Rule 26(c).

## II. The documents Plaintiff seeks are not relevant to this case and fall outside the applicable statutes of limitation.

Plaintiff's Response makes a number of meritless arguments as to why the compliance monitor and targeted examination reports enforcing the 2011, 2012, and 2014 Consent Orders between Ocwen and NY DFS are relevant to his case. Quite simply, Plaintiff is on a fishing expedition to gather documents from long ago that have no bearing on the actual claims to be adjudicated by this Court.

Plaintiff claims the documents are related to whether Ocwen could verify the credit information it allegedly reported from 2011 through 2016, whether it willfully violated the FCRA, and whether it may obtain punitive damages under FCRA. (Doc. 118, pp. 14-17.) But the FCRA does not require a loan servicer to look back several years to investigate consumer disputes. Furthermore, Plaintiff has already obtained hundreds of pages of documents from Ocwen, as well as the consumer reporting agencies Equifax, Trans Union, and Experian. Additionally, Plaintiff has already taken the depositions of Experian and TransUnion.[1] Plaintiff has not provided any explanation to the Court as to why the discovery it already h done, which includes the documents produced by Ocwen concerning Plaintiff's credit reporting history, is insufficient. In fact, the information that Plaintiff is

---

[1] Plaintiff also noticed and scheduled the deposition of Equifax, which Plaintiff's counsel then voluntarily canceled the day before the deposition was to take place.

4

seeking regarding Ocwen's investigation of any consumer dispute raised by Plaintiff is contained in the ACDV and AUD documents that have been produced.[2] No information about Plaintiff's Georgia loan or credit dispute history is in the compliance monitor and targeted examination reports enforcing Consent Orders between Ocwen and NY DFS.  Nor do these reports or NY DFS documents concern a time period which is viable for Plaintiff's alleged FCRA claim.

More importantly, the FCRA does not require a creditor to look back several years before such a dispute to conduct an investigation into the credit-related dispute – only to conduct a "reasonable investigation."  *See Taylor v. Georgia Power Co.*, 697 Fed. Appx. 630, 631 (11th Cir. 2017) (affirming district court's holding that GPC "conducted a reasonable investigation" as it "reviewed all the information it had in its possession as the account holder" and "verified [the plaintiff's name, birth date, social security number, and the amount owed on the account, before verifying the debt with Equifax.")  Whether Ocwen conducted a reasonable investigation in this case will turn on the facts of the investigation itself and on Plaintiff's own credit file information (which is a reasonable topic for discovery in this matter and which has been produced).  A liability determination

---

[2] Ocwen would be happy to provide Plaintiff's ADCV and AUD forms (that have been produced) for the Court's review if doing so would be helpful.

in this case does not require a review of compliance monitor reports related to a New York regulatory investigation, New York borrowers, or New York properties.

Plaintiff also argues he needs the compliance monitor and targeted examination reports enforcing the NY DFS/Ocwen Consent Orders to investigate the question of whether Ocwen is a debt collector under the FDCPA. (Doc. 118, p. 18.) This makes no sense at all. First, Ocwen has admitted it acquired servicing rights for Plaintiff's mortgage on November 1, 2011, after Plaintiff's alleged default. (Ocwen's Answer, Doc. 73, ¶¶ 12-13.) As such, no discovery is required on this issue. Further, it is unclear how the reports enforcing the NY DFS Consent Orders could have any bearing on whether Ocwen serves as a debt collector for Plaintiff's loan in this case. Instead, the answer to that question would be determined by a review of the facts of this case and Plaintiff's specific loan file—not the examination of borrower files and loan histories from New York, which are wholly unrelated to Plaintiff's Georgia loan account.

Plaintiff argues that the subpoenaed documents somehow relate to whether Ocwen has a "pattern and practice" of violating RESPA.[3] (Doc. 118, pp. 19-20.)

---

[3] A plaintiff may recover actual damages under RESPA and "any additional damages, as the court may allow, in the case of a pattern or practice of noncompliance with the requirements of this section." *Bivens v. Select Portfolio Servicing, Inc.*, 1:15-CV-4325-ELR-JKL, 2017 WL 8181523, at *9 (N.D. Ga. Dec. 18, 2017), report and recommendation adopted at 2018 WL 3688935 (N.D. Ga. Feb. 27, 2018), appeal

6

Specifically he argues the NY DFS compliance reports are relevant to "whether Ocwen is treating borrowers fairly and is communicating with borrowers appropriately." (Doc. 118, p. 20.)  But, Plaintiff did not raise these allegations in the Second Amended Complaint. Rather, Plaintiff's RESPA claim alleges that Ocwen failed to acknowledge receipt of Plaintiff' inquiries, qualified written requests, and notices of error within five (5) days; failed to conduct a reasonable investigation into errors raised by Plaintiff in his correspondence; failed to provide Plaintiff with a written response regarding the outcome of Defendant's investigation; and failed to provide Plaintiff with a written statement as to Plaintiff's right to request documentation relied on by Defendant in reaching its determination within thirty (30) days.  (Doc. 53, pp. 22-26.)  These allegations are all fact-specific to Plaintiff's mortgage account.  None of these allegations involve a fairness determination.  More importantly, whether Ocwen timely satisfied its obligations under RESPA with regard to Plaintiff does not require a review of NY DFS documents or a fairness determination.  Indeed, Plaintiff cannot and has not

---

dismissed, 18-11215-CC, 2018 WL 4656795 (11th Cir. Sept. 13, 2018) (emphasis added). But "a plaintiff cannot recover statutory damages without actual damages." Id. (citation omitted). "Actual damages are a necessary element of a RESPA claim; without them, the claim fails." Id.  Before even considering whether "pattern or practice" damages are available from Ocwen in this case, Plaintiff must show actual damages from non-compliance with RESPA.  The documents sought from NY DFS have absolutely no bearing on this issue as to Plaintiff.

7

pointed the Court to a single piece of correspondence that demonstrates its RESPA obligations were even triggered by Plaintiff. 12 U.S.C. § 2605(e).

By statutory definition, a QWR or Notice of Error is "written correspondence, other than notice on a payment coupon or other payment medium supplied by the servicer, that (i) includes, or otherwise enables the servicer to identify, the name and account of the borrower; and (ii) includes a statement of the reasons for the belief of the borrower, to the extent applicable, that the account is in error or provides sufficient detail to the servicer regarding other information sought by the borrower." 12 U.S.C. §2605(e)(1)(B)(ii).  Plaintiff has not shown that the correspondence he sent to Ocwen meets the statutory definition.

Additionally, the law is clear that servicers are not required "'to respond to any question that a borrower may ask—no matter how broad, vague, or far afield.'" *Dynott v. Nationstar Mortg., LLC*, No. 1:13-cv-1474-WSD, 2014 WL 1028886, at *17 (N.D. Ga. Mar. 17, 2014) (quoting *DeVary v. Countrywide Home Loans, Inc.*, 701 F. Supp. 2d 1096, 1106 (D. Minn. 2010)).  Instead, RESPA requires only that a loan servicer respond to a QWR that seeks "information relating to the servicing of such loan." 12 U.S.C. § 2605(e); *Dynott*, 2014 WL 1028886, at *17. Again, Plaintiff has not provided the Court with any correspondence showing the queries raised in this case actually concern

information relating to the servicing of his loan.[4]  The NY DFS documents Plaintiff seeks have no bearing on whether Plaintiff has met these basic elements of a RESPA claim.  And, without a showing that a valid RESPA claim exists, there simply is no reason to seek over burdensome, grossly disproportionate and irrelevant discovery from a non-party such as NY DFS.

Finally, as outlined in Ocwen's initial Memorandum of Law, nearly everything Plaintiff seeks from NY DFS and the compliance monitors StoneTurn Group and Boston Portfolio Advisors falls far outside the applicable statutes of limitation.  Plaintiff, who filed his FCRA claim in November 2016, and his RESPA and FDCPA claims in January 2017, attempts to reach far back into the past to obtain compliance and examination reports related to consent orders entered into in New York in 2011 and 2012 concerning conduct prior to those dates – well before any of Plaintiff's claims accrued based on his allegations and the applicable statutes of limitation.  Discovery outside the statute of limitations should not be permitted.  *See McCarley v. KPMG Int'l*, 293 Fed. Appx. 719, 722 (11th Cir. 2008)

---

[4] The term "servicing" is a defined term under RESPA, meaning "receiving any scheduled periodic payments from a borrower pursuant to the terms of any loan…and making the payments of principal and interest and such other payments with respect to the amounts received from the borrower as may be required pursuant to the terms of the loan." 12 U.S.C. § 2605(i)(3).  "A written inquiry that does not relate to servicing is not a QWR." *Smith v. Bank of Am. Home Loans,* 968 F. Supp. 2d 1159, 1170 (M.D. Fla. 2013).

(noting RESPA's three-year statute of limitation); *Kelley v. Law*, 1:13-CV-266-WSD-ECS, 2013 WL 12382670, at *2 (N.D. Ga. Apr. 29, 2013) (dismissing FDCPA claim because it concerned a communication that fell outside "the one-year statute of limitations for FDCPA claims and citing 15 U.S.C. § 1692k(d)); *Lamb v. Verizon Wireless Servs., L.L.C.*, 284 Ga. App. 696, 697, 644 S.E.2d 412, 413 (2007) (reciting FCRA's two year statute of limitation). For these reasons, the documents sought from NY DFS are not relevant to the FCRA, RESPA, and FDCPA claims set forth in the Second Amended Complaint.

### III.  This case is plainly distinguishable from U.S. v. Fisher.

At the conclusion of his briefing, Plaintiff argues that Ocwen has made arguments similar to these in a previous case to no avail. (Doc. 118, pp. 23-24.) Plaintiff's arguments are misplaced. Not only is the case he cites plainly distinguishable from the instant matter, but the Texas Court's decision concerning discovery under a False Claims Act ("FCA") matter is not binding on this Court.

The case cited by Plaintiff, *United States ex rel. Fisher v. Ocwen Loan Servicing, LLC*, No. 4:12-CV-543, 2015 WL 3942900 (E.D. Tex. June 26, 2015), involves the prosecution of a *qui tam* proceeding under the federal False Claims Act by the United States Department of Justice. In *Fisher*, "[r]elators assert[ed] FCA claims based on false certifications of compliance as part of the Treasury

Department's Home Affordable Modification Program ("HAMP"). Relators allege[d] that Ocwen's loan modifications and loss mitigation programs failed to comply with federal and state laws, including, but not limited to, New York state law." *Id.* at *1. The *Fisher* court specifically opined that the "benefit gained by seeking the truth in this FCA case" outweighed any interest or right of Ocwen and NY DFS. *Id.* at *5. The *Fisher* court advised further that the documents at issue were" highly relevant documents in a FCA case." *Id.*

Unlike *Fisher*, the case here does not involve New York state law or Ocwen loan modifications and loss mitigation programs offered to New York borrowers. Plaintiff's claims have nothing to do with HAMP or a loan modification, and Plaintiff has not asserted any FCA claim, which serves to combat fraud against the United States. Rather, Plaintiff has asserted three simple, individual statutory claims relating to credit reporting, debt collection, and servicing of his particular mortgage loan. The NY DFS documents are not possibly relevant. And to suggest that Plaintiff's FCRA, FDCPA, and RESPA claims are in any way related or similar to the *Fisher* proceeding is obviously wrong and merely serves as another example of Plaintiff's mission to harass Ocwen (and other non-parties) with grossly disproportionate, irrelevant discovery requests. Plaintiff's abusive

11

discovery tactics should be halted by this Court, and Ocwen's protective order should be granted.

## IV. Ocwen satisfied its "meet and confer" requirement.

Without citing any case law or authority, Plaintiff argues Ocwen's Motion for Protective Order should be denied for the failure to meet and confer. This is nothing more than a red herring—and a disingenuous distraction at best. Indeed, Plaintiff has no intention of withdrawing the NY DFS Subpoena or otherwise being reasonable about limiting the requested non-party discovery.

Where further attempts to confer are futile, this Court and others have held that counsel "satisfied its obligation to confer with Plaintiff prior to the filing of . . . [a] Motion [for Protective Order]…." *Porter v. Tyco Healthcare Grp. LP*, 1:08-CV-1203-CC, 2008 WL 11320000, at *1 (N.D. Ga. June 11, 2008) (entering motion for protective order where "further attempts to confer would have been futile"). *See also U.S. Fire Ins. Co. v. Bunge North Am., Inc.*, No. 05-cv-2192-JWL-DJW, 2008 WL 2222022, at *4 (D. Kan. May 28, 2008) (finding conference requirements satisfied where parties were at an impasse and additional attempts to resolve the discovery disputes would have been futile); *Kobelco Metal Power of Am., Inc. v. The Energy Co-op., Inc.*, No. IP 01-0051-C H/K, 2001 WL 1397311, at *2 (S.D. Ind. Oct. 30, 2001) (finding substantial compliance with duty to confer

where there was no possibility of the parties reaching an agreement); *Global Polymer Indus., Inc. v. C & A Plus, Inc.*, No. Civ. 05-4081, 2006 WL 1344088, at *1 (D.S.D. May 15, 2006) (excusing duty to confer where it was apparent that efforts to confer would be futile).

This is neither a putative class action nor a *qui tam* proceeding maintained by the U.S. Department of Justice. Yet, Plaintiff's counsel has served hundreds of discovery requests on Ocwen that are harassing and grossly disproportionate to the three limited claims at issue. Ocwen has objected to the requested discovery in its own responses to Plaintiff's Interrogatories and Requests for Production and it has specifically objected to requests that relate directly to the non-party subpoenas that Plaintiff has issued to NY DFS and the compliance monitors. Furthermore, the undersigned defense counsel **has conferred** both telephonically and in writing with Plaintiff's counsel on multiple occasions since April about the discovery and Ocwen's objections thereto. NY DFS counsel also conferred with Orion Webb about the NY DFS Subpoena, and Mr. Webb refused to withdraw the Subpoena or otherwise limit it. Thus, it is clear from these collective communications that the parties were at an impasse with respect to such discovery.

Rule 26(c) expressly allows Ocwen to move for a protective order in cases, such as this one, where discovery disputes involve multiple courts. *See Melder*,

2008 WL 1899569, at *3 (citing *United States v. Star Scientific, Inc.*, 205 F. Supp. 2d 482, 485 (D. Md. 2002)). Ocwen contemporaneously filed this Motion at the same time it filed a Motion to Quash the NY DFS Subpoena in the U.S. District Court for the Southern District of New York, Case No. 1:19-MC-236. Pursuant to Fed. R. Civ. P. 45(f), Ocwen has asked the New York District Court to transfer the Motion to Quash to this Court for resolution. *See Melder*, 2008 WL 1899569, at *5 (transferring motion to quash to forum court).

"Rule 26(c), governing protective orders, expressly permits flexibility in cases in which discovery disputes involve multiple courts." *Id.* at *3 (citations omitted). Based on the procedural history of this case and the existence of multiple discovery disputes involving non-parties in several different states, such flexibility is appropriate and warranted in this specific instance. This is particularly so when Plaintiff has had the continuing ability to withdraw the NY DFS Subpoena, but has chosen not to do so; thus necessitating the filing of this Reply and the intervention of this Court.

## **CONCLUSION**

For the foregoing reasons, and for the reasons set forth in Ocwen's Memorandum in Support of its Motion for Protective Order and the briefing and authorities incorporated therein, Ocwen respectfully requests that the Court grant

14

its Motion for Protective Order, prohibiting the disclosure of any NY DFS documents and quashing the non-party Subpoena to NY DFS.

In the alternative, Ocwen respectfully requests that this Court enter an order appropriately limiting the Subpoena to an specific time period and allowing for redactions of irrelevant, confidential, and/or proprietary information not relating to Plaintiff's loan.

Dated: June 10, 2019.

**LOCKE LORD LLP**

*/s/ John Michael Kearns*
Elizabeth J. Campbell
Georgia Bar No. 349249
*Email: ecampbell@lockelord.com*
John Michael Kearns
Georgia Bar No. 142438
*Email: john.kearns@lockeloard.com*
Terminus 200, Suite 1200
3333 Piedmont Road NE
Atlanta, GA 30305
(404) 870-4600
(404) 872-5547 (fax)

*Attorneys for Ocwen Loan Servicing, LLC*

71643306v.3 1006335/01554

## CERTIFICATE OF COMPLIANCE

Pursuant to Local Rule 7.1(D), I hereby certify that the foregoing brief has been prepared in compliance with Local Rule 5.1 (B) and (C), using 14-point Times New Roman font.

>/s/ *John Michael Kearns*
>John Michael Kearns
>Georgia Bar No. 142438

## CERTIFICATE OF SERVICE

I hereby certify that on this 10th day of June, 2019, I electronically file the foregoing **REPLY MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR PROTECTIVE ORDER** with the Clerk of Court using the CM/ECF system which will automatically send notice of its filing to the following attorney of record:

>Orion Gregory Webb
>Smith Welch Webb &
>White, LLC
>Suite 300
>280 Country Club Drive
>Stockbridge, GA 30281
>*owebb@smithwelchlaw.com*

>*/s/ John Michael Kearns*
>John Michael Kearns
>Georgia Bar No. 142438

16