# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
### ATLANTA DIVISION

| | | |
|---|---|---|
| **FRED PONDER,** | ) | |
| | ) | |
| **Plaintiff,** | ) | **Civil Action No.** |
| | ) | |
| **v.** | ) | **1:16-cv-04125-ODE-LTW** |
| | ) | |
| **OCWEN LOAN SERVICING** | ) | |
| **LLC, et al.,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## PLAINTIFF'S OBJECTION TO PROTECTIVE ORDER

COMES NOW Plaintiff, Fred Ponder by counsel, and files his Objection to the Order Granting Defendant's Motion for a Protective Order against Plaintiff's subpoena of records from the New York State Department of Financial Services, and shows this Court the following:

### INTRODUCTION

The Magistrate Judge's granting of a protective order against Plaintiff's subpoena of records from the New York State Department of Financial Services was clear error because Defendant did not comply with Rule 26(c)(1), making a specific demonstration of facts in support of the request, rather than conclusory or speculative statements about the need for a protective order and the harm which will be suffered without one, because Defendant did not meet and confer prior to seeking

the protective order, and because the order results in undue prejudice to Plaintiff due to the importance of the discovery at issue.

## LEGAL STANDARD

A party has fourteen days after being served with a magistrate judge's pretrial order to object to it, and if she timely objects the district judge in the case must consider the objections and modify or set aside any part of the order that is clearly erroneous or is contrary to law. Fed. R. Civ. P. 72(a); *Abrams-Jackson v. Avossa*, 743 F. App'x 421, 424 (11th Cir. 2018).

> Clear error is a highly deferential standard of review. As the Supreme Court has explained, "a finding is 'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *Anderson v. City of Bessemer City,* 470 U.S. 564, 573 (1985) (quoting *United States v. United States Gypsum Co.,* 333 U.S. 364, 395 (1948)). District courts apply the clearly erroneous standard to findings of fact by the magistrate judge, whereas they apply the contrary to law standard to legal conclusions. *Smith v. City of Moultrie,* 6:06–CV–39 (HL), 2006 WL 3535686 at *1 (M.D.Ga. Dec. 7, 2006). A legal conclusion is contrary to law if it was based on a misinterpretation or misapplication of applicable law. *Id.* The standard for overturning a magistrate judge's non-dispositive order is "a very difficult one to meet." *Faircloth v. Baden,* 1:11–CV–86 WLS, 2012 WL 3574353 at *1 (M.D.Ga. Aug. 16, 2012) (quoting *Thornton v. Mercantile Stores Co., Inc.,* 180 F.R.D. 437, 439 (M.D.Ala.1998)); *see also, Graham v. Mukasey,* 247 F.R.D. 205, 207 (D.D.C.2008) (magistrate judge's ruling in discovery dispute "is entitled to great deference").

In re H.M.G., No. 1:13-CV-2598-CAP-LTW, 2014 WL 11279384, at *2 (N.D. Ga. Dec. 12, 2014), rev'd sub nom. Glock v. Glock, Inc., 797 F.3d 1002 (11th Cir. 2015).

## BACKGROUND

This case arises because Ocwen refused to correct inaccurate reporting on two separate trade lines in the Plaintiff, Fred Ponder's credit report, indicating a default on his mortgage, failed to investigate or respond to qualified written requests regarding errors in Defendant's records on Mr. Ponder, and knowingly communicated inaccurate loan information to Mr. Ponder and others. In his response to Defendant's motion, the Plaintiff showed the relevance of the subpoenaed documents that relate to Ocwen's acquisition of servicing rights to Mr. Ponder's mortgage when it acquired Litton Loan Servicing in 2011. The claims and defenses in this action relate to Defendant's violations under the Real Estate Settlement Procedures Act ("RESPA"), the Fair Credit Reporting Act ("FCRA"), and the Fair Debt Collection Practices Act ("FDCPA").

While Mr. Ponder fell behind on his mortgage payments way back in 2005, he was able to catch his account up by February of 2009. (Doc. 117-3). Then, on March 11, 2009, Litton reversed payments for eight months of payments, applied late fees for each of these dates, and applied the balance to itself for what it input to its ledger as "Recovery of ES Adv from Borrower." (Doc. 117-3). A succinct

interpretation of Doc. 117-3 is provided in Doc. 155-4. Further, Litton's ledger is full of bogus fees for services that are unexplained, and for which Ocwen cannot or will not provide an explanation, such as "LENDER PLACED FIRE." (Doc. 117-3).

Defendant has also failed to respond to multiple qualified written requests, failed to investigate notices of error, and continued to report the account as a double trade-line report. Despite Mr. Ponder disputing Ocwen's errors directly to Ocwen and then through the consumer reporting agencies, Ocwen continued to falsely report just about the worst thing that could appear on a consumer's report: a defaulted mortgage. (Doc. 117-4, TU 16). In fact, Ocwen reported two defaulted mortgages. (Doc. 117-4, TU 16-TU 17).

Under RESPA, Mr. Ponder has a cause of action pursuant to 12 U.S.C. 2605(f). Pursuant to Section 2605(e), Mr. Ponder sent documentation to Ocwen indicating that he had been paying his mortgage as required and disputing any delinquency on his account, including the assessment of late charges and other default fees. He asked that they remove the delinquency and investigate his claims. Ocwen did not 1) make any corrections to the account, 2) conduct any investigation to his claims, 3) provide Mr. Ponder any written explanation regarding his request or 4) cease its delinquent credit reporting during his disputes, despite their obligations under Section 2605(e)(2) and (3) until Mr. Ponder filed a complaint with the CFPB.

In 1996, Congress amended the FCRA to add §1681s-2, imposing on "furnishers of information" to credit bureaus detailed and specific responsibilities, including the consumer dispute procedures stated in subsection (b). A simplified summary is that §1681s-2(b) applies when a consumer makes a dispute through the credit bureaus and requires the creditor to conduct a "reasonable investigation" and to accurately report the results of that investigation back to the bureaus. Mr. Ponder alleges that the Defendant violated both of these requirements.

The subpoenaed documents all stem from an investigation conducted due to the New York State Department of Financial Service's concerns regarding Ocwen's rapid growth and capacity to properly acquire and service a significant portfolio of distressed home loans:

> [I]n connection with Ocwen's acquisition of Litton and amid concerns regarding Ocwen's rapid growth and capacity to properly board a significant portfolio of distressed home loans, Ocwen and the New York State Department of Financial Services… entered into an [a]greement…, which required Ocwen to; (1) establish and maintain sufficient capacity to properly board and manage its significant portfolio of distressed loans; (2) engage in sound document execution and retention practices to ensure that mortgage files were accurate, complete, and reliable; and (3) implement a system of robust internal controls and oversight with respect to mortgage servicing practices performed by its staff and third-party vendors…

(Doc. 117-1, pp. 1-2) (Doc. 117-2, p. 2) ("Agreement on Mortgage Servicing Practices… required Ocwen to adhere to certain servicing practices in the best interest of borrowers and investors.").

Prior to the agreement "a multistate examination of Ocwen... identified, among other things, deficiencies in Ocwen's servicing platform and loss mitigation infrastructure, including (a) robo-signing, (b) inaccurate affidavits and failure to properly validate document execution processes, (c) missing documentation, ... [and] (e) failure to properly maintain books and records..." (Doc. 117-2, p. 3). Further, "[t]he examination of Litton also revealed that, prior to Ocwen's acquisition of Litton, members of Litton's information technology staff falsified documents provided to the Department during the review of Litton's information technology infrastructure. (Doc. 117-1, p. 1).

On June 13, 2012, the NYSDFS conducted a targeted examination of Ocwen to assess its compliance with the aforementioned agreement and determined that Ocwen had failed to implement "policies and procedures to verify borrower information on newly boarded accounts to accurately reflect the status and current balance of the borrower's account..." (Doc. 117-1, pp. 1 & 4). This admission by Ocwen is signed by its then President and CEO Ronald M. Faris. (Doc. 117-1, p. 9). "The targeted examination also identified instances that indicated... (b) dual-tracking... and (f) failing to ensure that trial or permanent modifications granted to borrowers by a prior servicer are honored upon transfer to Ocwen." (Doc. 117-2, pp. 4-5).

Ocwen then agreed to hire a Compliance Monitor to conduct a comprehensive review of Ocwen's servicing operations and operational policies and procedures, compliance with state and federal law, the accuracy of borrower account information, and borrower complaints, among other topics. (Doc. 117-1, pp. 4-6) (Doc. 117-2, p. 5).

> … Ocwen's information technology systems are a patchwork of legacy systems and systems inherited from acquired companies, many of which are incompatible… a fix to one system creates unintended consequences in other systems.

(Doc. 117-2, p. 6.  "As a result, Ocwen… maintains inaccurate records. There are insufficient controls in place— either manual or automated—to catch all of these errors and resolve them." (Doc. 117-2, p. 6). "Despite these issues, Ocwen continues to rely on those systems to service its portfolio of distressed loans" leading "it to employ fewer trained personnel than its competitors", and hiring  "offshore customer care personnel, that Ocwen is simply… training… to read the scripts and the dialogue engines with feeling." (Doc. 117-2, p. 7-8). Additionally, Ocwen agreed to have in place an Operations Monitor who would thoroughly review its operations and submit monthly action reports and quarterly Operation Reports, during the relevant period within the statutes of limitations of this case. (Doc. 117-2 pp. 11-15). These reports include the following relevant information: "[n]umber of personnel and the training and expertise of its personnel in all servicing operations", "**[o]nboarding process for newly acquired mortgage servicing rights**", [c]ontrols

in identifying and correcting errors made by Ocwen's personnel or systems", [r]isk management functions", "Ocwen borrower experience", "Determinations as to whether Ocwen's servicing, compliance, and information technology functions are adequately staffed", "Determinations as to whether Ocwen's servicing, compliance, and information technology personnel are adequately trained", "[t]he development and implementation of a plan to resolve record-keeping and borrower communication issues", "[t]he development and performance of **a risk assessment to identify potential risks and deficiencies in the onboarding process**". (Doc. 117-2 pp. 11-15). These records are highly relevant to Mr. Ponder's claims.

## ARGUMENT AND CITATION TO AUTHORITY

Rule 26(c)(1) allows for a protective order precluding any type of discovery "for good cause shown." The party requesting a protective order must make a specific demonstration of facts in support of the request, rather than conclusory or speculative statements about the need for a protective order and the harm, which will be suffered without one. E.g., In re PE Corp. Sec. Litig., 221 F.R.D. 20, 26 (D. Conn. 2003). A court must balance the competing factors involved in determining whether good cause has been shown. See Farnsworth v. Procter & Gamble Co., 758 F.2d 1545, 1547 (11th Cir.1985). Defendant Ocwen has failed to meet its burden, so Ocwen's motion should be denied based on that alone.

However, if a sufficient showing of good cause is found, and the Court forgives the failure to meet and confer, the burden then shifts to the nonmoving party to show why relief should still not be granted, either because of undue prejudice or the importance of the discovery at issue. E.g., Wiggins v. Burge, 173 F.R.D. 226, 229 (N. D.Ill.1997) ("In deciding whether good cause exists, the district court must balance interests involved: the harm to the party seeking the protective order and the importance of the disclosure"); Cummings v. General Motors Corp., 353 F.3d 944, 954 (10th Cir.2004) (it is not enough that the discovery be burdensome; that burden must be "undue").

## I.    Defendant's motion should be denied for Failure to Meet and Confer.

Because Defendant failed to comply with its meet and confer duties, its motion should be denied. See Fed. R. Civ. P. 26(c)(1) ("A party ... may move for a protective order.... The motion must include a certification that the movant has in good faith conferred or attempted to confer with other affected parties in an effort to resolve the dispute without court action."). Defendant did not attach the required certification, and could not have done because Defendant did not attempt to meet and confer with Plaintiff in the thirty days that followed the notice of the subject subpoena. Instead, Defendant waited until 7:53 pm, the day before the production was required, giving this Court no time to review it, and filed its motion. Given

Defendant's failure to follow this most basic of requirements to obtain a protective order, Defendant's motion should be denied.

**II.   Defendant does not contest that Ocwen has standing to seek a protective order, but Plaintiff does not have standing for its motion to quash argument.**

In the Eleventh Circuit, "standing exists if the party alleges a 'personal right or privilege' with respect to the subpoenas." <u>Auto-Owners Ins. Co. v. Se. Floating Docks, Inc.</u>, 231 F.R.D. 426, 429 (M.D. Fla. 2005). Thus Defendant may motion to quash Mr. Ponder's subpoena by exerting a personal right or privilege with respect to the subject subpoena. However, Defendant has chosen to assert others' personal rights and privileges, which it cannot do.

Besides relevance, the only argument that Defendant makes for standing is then abandoned by Defendant. Defendant seeks to assert a right or privilege based upon the fact that it has objected to producing some of the documents requested in the subpoena. Defendant seeks to exclude all requested documents on the basis that some of them have already been requested from Defendant. The Requests to which Ocwen refers are numbers 27 and 28 of Mr. Ponder's Second Request for Production of Documents.

> REQUEST FOR PRODUCTION 27. Produce all reports by the Compliance Monitor identified in ¶9 of the Consent Order attached as Exhibit "A." [Exhibit A to the requests is Exhibit 2 attached to the Memorandum]
>
> ANSWER: See Response to Request No. 26.

> REQUST FOR PRODUCTION 28. Produce all reports by the Operations Compliance Monitors generated pursuant to the Consent Order attached as Exhibit "A."

> ANSWER: See Response to Request No. 26.

However, Defendant has not properly preserved the purported controversy for this Court's attention. Fed. R. Civ. P. 34(b)(2)(C) requires that "[a]n objection must state whether any responsive materials are being withheld on the basis of that objection" and "[a]n objection to part of a request must specify the part and permit inspection of the rest." Further, Defendant did not "state with specificity the grounds for objecting to the request, including the reasons…" Fed. R. Civ. P. 34(b)(2)(B). Defendant has failed to properly object under Rule 34. Further, the cited objection is boilerplate and fails to indicate whether any responsive documents exist. The Eleventh Circuit, in no uncertain terms, has stated that such conclusory objections cannot form the basis for protective orders:

> To be adequate, objections which serve as the basis of a motion for protective order under Fed.R.Civ.P. 26 should be "plain enough and specific enough so that the court can understand in what way the interrogatories are alleged to be objectionable." *Davis v. Fendler,* 650 F.2d 1154, 1160 (9th Cir.1981). *See Josephs v. Harris Corp.,* 677 F.2d 985 (3d Cir.1982) (quoting *Roesberg v. Johns-Manville Corp.,* 85 F.R.D. 292, 296–97 (E.D.Pa.1980)) ("party resisting discovery 'must show specifically how ... each interrogatory is not relevant or how each question is overly broad, burdensome or oppressive....' ").

> … The subsidiary question, therefore, is whether appellees' motion for a protective order contained sufficiently specific objections.

<u>Panola Land Buyers Ass'n v. Shuman</u>, 762 F.2d 1550, 1558-59 (11th Cir. 1985). Objections that discovery was unnecessary, too long, too broad, require too much time, are expensive to complete, are irrelevant, are improperly timed, and entail unreasonable geographic compliance with no mention of the Rule 26(b) factors with "sufficient specificity to allow the magistrate and the district court, absent an abuse of discretion, [forms no basis] to grant the motion for a protective order." <u>Id.</u> at 1559. The Court also determined that the recitation of expense and burdensomeness were merely conclusory. <u>Id.</u> These are just the sort of objection that the Eleventh Circuit described as lacking sufficient specificity to allow the Court to grant a protective order, and merely conclusory:

> Ocwen objects to this Request on the grounds that it is overly broad, unduly burdensome, not reasonably limited in time and scope, and because it commands the disclosure of documents and information that are neither relevant to the issues that are the subject of this lawsuit, nor reasonably calculated to lead to the discovery of evidence admissible in this case. **Ocwen objects that this Request seeks documents and information from a third party** and that is grossly disproportionate to the 3 statutory claims at issue before this Court. Ocwen objects because the discovery sought has absolutely no bearing whatsoever on the determination of Ocwen's liability to Plaintiff in this action under RESPA, the FDCPA or the FCRA. Ocwen further objects that the time period at issue in 2011 falls far outside the statute of limitations of the claims at issue. Finally, Ocwen objects that state and federal laws prohibit the disclosure of confidential financial information belonging to other individuals in these circumstances, which do not warrant such disclosures. Plaintiff is on an improper fishing expedition which violates the spirit and rules of discovery.

(emphasis added). Defendant's statement that these documents reside with a third party indicate that Plaintiff will be severely prejudiced by the Magistrate Court's Order because there is no other avenue for Plaintiff to obtain this relevant, important information. Defendant failed to properly assert a privilege, so it cannot now rely on same. In order to withhold information otherwise discoverable, Defendant had to expressly make a claim and describe the evidence being withheld. See Fed. R. Civ. P. 26(b)(5)(A). Likely because Defendant's objections and responses are inadequate, Defendant does not assert its privileges or this discovery dispute as the reason to grant this protective order, but—instead—argues relevance, and non-parties' privileges under New York, Georgia, and Federal Banking Law. Aside from relevance, Defendant's purported standing is divorced from its arguments, so Defendant should be understood to only be properly bringing its motion on the basis of relevance. However, Mr. Ponder addresses each argument below.

### III. Mr. Ponder's Subpoena seeks Relevant evidence.

> Federal Rule of Evidence 402 states: "All relevant evidence is admissible, except as otherwise provided by the Constitution of the United States, by Act of Congress, by these rules, or by other rules prescribed by the Supreme Court pursuant to statutory authority. Evidence which is not relevant is not admissible."

Thus, in a class action case pending against Ocwen in the Eastern District of New York, the Court found Ocwen's relevance argument without merit

because "[t]he very reason NYDFS began investigating Ocwen's practices closely was because it

> ha[d] consumer protection concerns relating to practices highlighted in the media that have been prevalent in the mortgage servicing industry generally, including but not limited to, the practice of "Robo-signing," referring to affidavits in foreclosure proceedings that falsely attest that the signer has personal knowledge of the facts presented therein and/or were not notarized in accordance with state law; weak internal controls and oversight that may have compromised the accuracy of foreclosure documents; unfair and improper practices in connection with loss mitigation, including improper denials of loan modifications; and imposition of improper fees by servicers, amongst others.

Harte v. Ocwen Fin. Corp., No. 13-CV-5410, 2018 WL 1830811, at *15 (E.D.N.Y. Feb. 8, 2018), report and recommendation adopted, No. 13CV5410MKBRER, 2018 WL 1559766 (E.D.N.Y. Mar. 30, 2018). As is shown below these investigations and the monitor reports are highly relevant to Mr. Ponder's claims and Defendant's asserted defenses.

> a. Plaintiff seeks documents related to whether Defendant could verify the information it repeatedly reported on Plaintiff from 2011 through 2016.

There are two categories of disputed information that Plaintiff disputed as inaccurate that are at issue in this case. Plaintiff disputed Defendant's double reporting of his mortgage, and Plaintiff disputed Defendant's report that he was in default, including the balance reported legacy fees and penalties assessed by Litton prior to Ocwen's assumption of servicing duties on the account. § 1681s–2(b)(1) requires creditors, after receiving notice of a consumer dispute from a credit

reporting agency, to conduct a reasonable investigation of their records to determine whether the disputed information can be verified. See Hinkle v. Midland Credit Mgmt., Inc., 827 F.3d 1295, 1302 (11th Cir. 2016) (stating that "reasonableness" is an appropriate touchstone for evaluating investigations under § 1681s–2(b). Hinkle v. Midland Credit Mgmt., Inc. was the case of first impression in the Eleventh Circuit of what constitutes a "Reasonable Investigation" by a credit furnisher, and its facts were similar to the case at hand in that the defendant, Midland Credit Management, Inc., much like Defendant Ocwen in the present case, had acquired a loan that was purported to already be in default and then relied solely on the records in its file to verify its credit reporting. In holding that Midland had not conducted an adequate investigation, the Court stated:

> § 1681s–2(b) requires some degree of careful inquiry by furnishers of information. In particular, when a furnisher does not already possess evidence establishing that an item of disputed information is true, § 1681s–2(b) requires the furnisher to seek out and obtain such evidence before reporting the information as verified." *See id.* at 431 (reversing summary judgment because a reasonable jury could find a violation of § 1681s–2(b) where the furnisher **"d[id] not look beyond the information contained in the [internal data file] and never consult[ed] underlying documents such as account applications"**); *cf. Cahlin*, 936 F.2d at 1160 (observing that a claim for failure to investigate "is properly raised when a particular credit report contains a *factual* deficiency or error that could have been remedied by uncovering additional facts"). The requirement to uncover additional facts will be more or less intensive depending on what evidence the furnisher already possesses. For instance, a debt buyer with account-level documentation or more comprehensive warranties from its predecessor debt buyer might be in a completely different position than

Midland.

(emphasis added) Id. at 1303. "When a furnisher reports that disputed information has been verified, the question of whether the furnisher behaved reasonably will turn on whether the furnisher acquired sufficient evidence to support the conclusion that the information was true. This is a factual question, and it will normally be reserved for trial." Id. However, the analysis does not stop there. The Court goes on to explain that a furnisher has two other options besides reporting that information is verified. This analysis has been cited approvingly against Defendant in this case and others. See Ponder v. Ocwen Loan Servicing, LLC, No. 1:16-CV-4125-ODE-LTW, 2018 WL 4474635, at *4 (N.D. Ga. July 30, 2018), report and recommendation adopted in part, overruled in part, 362 F. Supp. 3d 1275 (N.D. Ga. 2018); see also Hill v. Ocwen Loan Servicing, LLC, 369 F. Supp. 3d 1324 (N.D. Ga. 2019).

The question of what constitutes a "reasonable investigation" into a disputed debt under the FCRA is very fact dependent, and requires an investigation into whether the investigation is being conducted by a credit reporting agency or a furnisher of information such as Defendant. Id. at 1302. Additionally, the court may consider the status of the furnisher as an original creditor, a collection agency collecting on behalf of the original creditor, a debt buyer, or a down-the-line buyer, and on the quality of documentation available to the furnisher:

> We emphasize that what constitutes a "reasonable investigation" will
> vary depending on the circumstances of the case and whether the

investigation is being conducted by a CRA under § 1681i(a), or a furnisher of information under § 1681s–2(b). *See Chiang*, 595 F.3d at 38 ("[W]hat is a reasonable investigation by a furnisher may vary depending on the circumstances."); *Gorman*, 584 F.3d at 1160 ("[T]he reasonableness of an investigation depends on the facts of the particular case ...."). Whether a furnisher's investigation is reasonable will depend in part on the status of the furnisher—as an original creditor, a collection agency collecting on behalf of the original creditor, a debt buyer, or a down-the-line buyer—and on the quality of documentation available to the furnisher. *See, e.g.*, *Johnson*, 357 F.3d at 431 (reasoning that a jury could find a § 1681s–2(b) violation where the original creditor ended its investigation before **"consult[ing] underlying documents such as account applications"**). The facts of this case require us to determine whether a reasonable jury could find that Midland—a down-the-line buyer with "as is" purchase agreements and no account-level documentation—fell short of the reasonable investigation standard when it relied on internal records to verify the identity of an alleged debtor.

(emphasis added) Id. An FCRA plaintiff must seek out information regarding the quality of the documentation available to the furnisher, the status of the furnisher, and all the facts surrounding its action to indicate that relying only on internal records to verify account information in a credit report is inadequate.

b. Plaintiff's Subpoena seeks documents related to whether Defendant willfully violated the FCRA.

Defendant's Fifth Defense is seemingly targeted at overcoming the willfulness requirement for a finding of punitive damages. It states that "…any representations or statements alleged to have been made by Ocwen were true and accurate at the time made and/or otherwise were made in **good faith and with a reasonable belief as to their validity and accuracy and with reasonable belief**

that all Ocwen's conduct was lawful." (emphasis added) (Doc. 73, p. 32). As described in depth above, any belief by Ocwen that it had accurate records without verifying could not be sincere, especially given that "[t]he examination of Litton also revealed that, prior to Ocwen's acquisition of Litton, members of Litton's information technology staff falsified documents provided to the Department during the review of Litton's information technology infrastructure." (Doc. 117-2, p. 3).

c. <u>Subpoenaed documents relate to whether Defendant has a pattern and practice of transgressing RESPA.</u>

The subject subpoena seeks monitor reports that explore Defendant's pattern and practice of RESPA violations. In order to recover statutory damages, the Plaintiff must show "a pattern or practice of noncompliance." See <u>Miranda v. Ocwen Loan Servicing, LLC</u>, 148 F. Supp. 3d 1349, 1355–56 (S.D. Fla. 2015), quoting 12 U.S.C. § 2605(f)(1)(B).

> "Pattern or practice" is not defined by a specific number of offenses; rather, the term suggests a standard or routine way of operating… failure to respond to one QWR did not amount to "pattern or practice" ... (finding defendant's insufficient response to two QWRs insufficient to establish "pattern or practice")… (failure to respond to QWRs on five occasions was sufficient to establish "pattern or practice").

(internal citations omitted) <u>Id.</u> As described more fully above, a multistate examination of Ocwen identified deficiencies in Ocwen's servicing platform and loss mitigation infrastructure, including robo-signing, inaccurate affidavits and failure to properly validate document execution processes, missing documentation

and failure to properly maintain books and records. (Doc. 117-2, p. 3). Further, the Monitor Reports, starting in 2014, and extending through at least 2017, monitored Ocwen's operations and provide a picture of whether there is a pattern and practice of the behavior to which Mr. Ponder was treated. (Doc. 117-2, p. 12). Further, the Monitors were charged with reviewing the Ocwen borrower experience, and "whether Ocwen is treating borrowers fairly and is communicating with borrowers appropriately". (Doc. 117-2, pp. 12-13). The full scope of what is contained in these Monitor Reports can only be ascertained from reviewing them but is described *supra.*

> d. <u>Discovery that Plaintiff seeks relates to Plaintiff's claim for punitive damages under the FCRA.</u>

Mr. Ponder is seeking the subject documents to help establish Ocwen's willfulness under <u>Safeco Ins. Co. of Am. v. Burr</u>, 551 U.S. 47 (2007); <u>see also</u> <u>Levine v. World Fin. Network Nat'l Bank</u>, 554 F.3d 1314, 1318 (11th Cir. 2009).   In <u>Levine</u>, the Eleventh Circuit actually just restated the Supreme Court's <u>Safeco</u> standard. *Id.* It has been held that the Safeco standard actually reduces the Plaintiff's willfulness burden:

> *Safeco* changed the standard previously applied in the Fifth Circuit, pursuant to which a defendant could have been found in willful noncompliance under § 1692n only if it " 'knowingly and intentionally committed an act in conscious disregard for the rights of others.' " *Stevenson v. TRW Inc.,* 987 F.2d 288, 293-94 (5th Cir.1993) (quoting *Pinner v. Schmidt,* 805 F.2d 1258, 1263 (5th Cir.1986), cert. denied, 483 U.S. 1022 (1987)); *see also Harris v. Defendant 3 Info. Servs.,*

*LLC,* No. C A 606CV-01810-GRA, 2007 WL 1862826, at \*2 (D.S.C. June 26, 2007) ("In Safeco, the Supreme Court unequivocally resolved this circuit split, holding that willfulness under 15 U.S.C. § 1681n(a) covers a violation committed in reckless disregard of Plaintiff's rights.").

Robertson v. J.C. Penney Co., Inc., No. 2:06CV3-KS-MTP, 2008 WL 623397, at \*9 (S.D. Miss. Mar. 4, 2008).  While in many circuits, the courts had previously required "knowing or conscious disregard," Dalton v. Capital Assoc.  Indus., Inc., 257 F.3d 409, 418 (4th Cir. 2001), or even "willful concealment," Cousin v. Trans Union Corp., 246 F.3d 359, 372 (5th Cir. 2001), the post-Safeco standard included "recklessness."  Levine, 554 F.3d at 1318.  Plaintiff is entitled to evidence that establishes Ocwen's level of recklessness or willfulness in its disregard of Plaintiff's rights under the FCRA. Ocwen, with notice of ongoing problems with information technology systems and personnel, including with respect to record keeping and borrower communications, number of personnel and the training and expertise of its personnel in all servicing operations, the onboarding process for newly acquired mortgage servicing rights, which is serious inflection point in this case because Ocwen's onboarding of Mr. Ponder's loan has led it to assume the veracity of the Litton information, and any information regarding the inadequacies of Ocwen's onboarding process prior to 2014 will directly relate to the question of whether Ocwen is and was aware that it is willfully parroting Litton's false records. (Doc. 117-2, p. 12). Many of the same information that will support Mr. Ponder's RESPA

statutory damages pattern and practice claim will support his punitive damages claim, but—further—the Monitor Reports purport to be extremely thorough, and to the extent that they put Ocwen on notice of its systematic failures and inadequate policies and procedures, staffing, etc., these reports indicate that Ocwen's illegal treatment of Mr. Ponder was willful.

    e.  <u>The Subpoena seeks evidence related to many of Defendant's defenses, as discussed supra in addition to the following.</u>

Defendant's Fourth Defense is that "Plaintiff's claims are barred because any alleged violation by Ocwen was unintentional, bona fide, and resulted notwithstanding Ocwen's maintenance of procedures reasonably adapted to avoid any such violation." (Doc. 73, p. 31). Obviously the review of the adequacy of Ocwen's procedures leading up to this litigation is relevant to Defendant's Fourth Defense.

Defendant's Twentieth Defense is that "[a]t all relevant times, Ocwen maintained and followed reasonable procedures to avoid violations of the FCRA and assure maximum possible accuracy of the information concerning Plaintiff in furnishing information related to Plaintiff." (Doc. 73, p. 34). Clearly, the review of the adequacy of Ocwen's policies leading up to this litigation is relevant to Defendant's Twentieth Defense.

Defendant's Ninth Defense is that "Plaintiff's damages are the result of the conduct of another, not the result of any wrongdoing on the part of Ocwen." (Doc.

73, p. 32). The information related to the transition from Litton to Ocwen can shed light on whether Mr. Ponder's damages are more the result of Litton's actions or Ocwen's actions.

IV. **Ocwen Seeks to Assert Other's Privilege's to Quash the Subpoena but has no standing to do so.**

   a. Defendant cannot assert the privilege of the NYSDFS.

The NYSDFS has chosen not to object to this subpoena, and Ocwen cannot assert another's privilege. "The law governing courts in the Eleventh Circuit… is… [that] standing exists if the party alleges a 'personal right or privilege' with respect to the subpoenas." Auto-Owners Ins. Co. v. Se. Floating Docks, Inc., 231 F.R.D. 426, 429 (M.D. Fla. 2005). Defendant has not asserted a personal privilege with respect to the materials, and has not pursued its prior objections argument besides relevance and attempting to assert another's privilege.

Ocwen has made this argument before to no avail, and provides this Court no reason to disagree with the Eastern District of Texas or the Eastern District of New York. See United States ex rel. Fisher v. Ocwen Loan Servicing, LLC, No. 4:12-CV-543, 2015 WL 3942900, at *3 (E.D. Tex. June 26, 2015). New York & Georgia Law does not preclude disclosure of the documents.

> Federal Rule of Evidence 501 provides that the "common law—as interpreted by United States courts in the light of reason and experience—governs a claim of privilege" unless federal law provides otherwise. Rule 501 also makes it clear that "in a civil case, state law

governs privilege regarding a claim or defense for which state law supplies the rule of decision."

Id. at *3. Ocwen had no expectancy that these records would not be disclosed in subsequent consumer litigation. See Id. at *5.

Federal Common Law does not form a justification for a protective order. The federal common law bank examination would not apply, even if Defendant could assert it.

> The federal banking privilege is "a discretionary one that depends upon ad hoc considerations of competing policy claims." *Rouson ex. rel. Estate of Rouson v. Eicoff,* No. 04–CV–2734, 2006 WL 2927161, at *4 (E.D.N.Y. Oct. 11, 2006). "The Court must weigh the government's interest in nondisclosure against those of the litigants and society in 'accurate judicial fact finding.' " *Id.* The Court should consider the following factors: (1) "the relevance of the evidence sought to be protected"; (2) "the availability of other evidence ..."; (3) "the 'seriousness' of the litigation and the issues involved ..."; (4) "the role of the government in the litigation ..."; and (5) "the possibility of future timidity by government employees who will be forced to recognize that their secrets are violable." *Id.* The NYDFS has not attempted to conduct this analysis, and the Court finds that even if it were to conduct that analysis, it would lead the Court to the conclusion that the privilege should not apply to highly relevant documents in a FCA case, as the Court similarly concluded in its analysis *supra.*

United States ex rel. Fisher v. Ocwen Loan Servicing, LLC, No. 4:12-CV-543, 2015 WL 3942900, at *5 (E.D. Tex. June 26, 2015). Similarly, Defendant has not attempted to conduct the above-described analysis, and it is unlikely that it could form a justification to exclude evidence that is directly on point to Mr. Ponder's FCRA and RESPA claims.

## **CONCLUSION**

The Magistrate Judge Walker did not provide grounds for her order other than stating at the hearing that Plaintiff exceeds the scope of discovery, but this is clearly in error considering that the discovery sought is directly relevant to Plaintiff's claims.

Respectfully submitted, this 26th day of July, 2019.

 /s/ Orion G. Webb
Orion G. Webb
Georgia Bar No. 479611
Smith Welch Webb & White, LLC
280 Country Club Drive #300
Stockbridge, Georgia 30281
(770) 389-4864 (telephone)
(770) 389-5193 (facsimile)
owebb@smithwelchlaw.com
*Attorney for Plaintiff*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this day, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system which will send notification of such filing to all attorneys of record.

**SMITH WELCH WEBB & WHITE, LLC**

<u>/s/ Orion Gregory Webb</u>
Orion Gregory Webb
Georgia Bar No. 479611
280 Country Club Drive, Suite 300
Stockbridge, GA 30281
Telephone: (770) 389-4864
owebb@smithwelchlaw.com
**COUNSEL FOR PLAINTIFF**

## <u>CERTIFICATION OF COMPLIANCE WITH LOCAL RULE 5.1</u>

Plaintiff's counsel hereby certifies that this pleading has been prepared with one of the font and point selections approved by the Court in L.R. 5.1.